**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

ELECTRONICALLY
FILED
Apr 12 2019
U.S. DISTRICT COURT
Northern District of WV

**ROXUL USA, INC.,**
**a Delaware corporation,**

      **Plaintiff,**

**v.**

Civil Action No. _3:19-CV-54_
(Judge _Groh_)

**BOARD OF EDUCATION OF THE**
**COUNTY OF JEFFERSON,**
**a West Virginia county board of education,**

      **Defendant.**

## COMPLAINT

For its Complaint against the Board of Education of Jefferson County (the "BOE"), Roxul USA, Inc. d/b/a ROCKWOOL states as follows:

## INTRODUCTION

1.     The ROCKWOOL group of companies were founded in Denmark in 1937, and they are the world's leading manufacturers of environmentally-friendly stone wool insulation.

2.     In late 2016 and in 2017, ROCKWOOL considered 50 sites in 10 states as a location for its new, $150 million insulation manufacturing facility in the United States. The new facility would, at full operating capacity, create at least 140 new, high-paying jobs. Ranson, West Virginia was one of the sites ROCKWOOL considered.

3.     ROCKWOOL was recruited to Ranson by a wide array of state and local officials. In connection with those recruiting efforts, the Jefferson County Commission, the Sheriff of Jefferson County, the Jefferson County Assessor, the Ranson City Council, **and the BOE** offered ROCKWOOL tax incentives if it agreed to build its new facility in Ranson.

4.     ROCKWOOL accepted that offer, and in October 2017, it entered into a Payment in Lieu of Taxes Agreement, or "PILOT," with the BOE and others.[1]

---

[1] A copy of the PILOT is attached as **Exhibit A**.

5.      ROCKWOOL began site preparation and construction in November 2017, and it has spent more than $47 million to date on permitting, constructing, and extending utilities to its new facility.

6.      Recently, the BOE had a change of heart. Bowing to public pressure created and fueled by half-truths and speculation, the BOE now opposes the facility. For instance, it has very publicly demanded a moratorium on construction, and it has repeatedly threatened to terminate the PILOT. Privately, however, the BOE has acknowledged it has no right to take either action.

7.      On April 9, 2019, the BOE tried a different tact—it told ROCKWOOL it had longstanding plans to construct a Regional Student Support Center and offered to buy 194.7 acres of ROCKWOOL's property for a fraction of what ROCKWOOL has spent to develop it. If ROCKWOOL rejected the offer, the BOE threatened to condemn the property.[2]

8.      Notably, the BOE could have located this Regional Student Support Center *on the approximately 150 contiguous acres of undeveloped property the BOE already owns in Ranson*. Barring that option, upon information and belief, the BOE could have purchased the nearly identically-sized tract next to ROCKWOOL's property from its owners.

9.      Instead, the BOE threatened to condemn ROCKWOOL's property where it is building the facility.

10.     The BOE's motive is transparent: by threatening to condemn ROCKWOOL's property, the BOE intends to prohibit ROCKWOOL's lawful activities over which the BOE has *zero* regulatory authority.

11.     Condemnation is an awesome and intrusive power, and left unchecked, the potential for abuse—especially in land use disputes like this—is boundless.

12.     For that reason, there are significant checks on the power to condemn. For example, "if a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry.

---

[2] A copy of the BOE's April 9, 2019 letter to ROCKWOOL is attached as **Exhibit B**.

2

No amount of compensation can authorize such action."[3] And if a condemnation is commenced for an apparently valid, stated purpose but the real reason for the take is to prevent a land use that the condemning body considers undesirable, it is also prohibited.[4]

13.    Here, the BOE's extortionate threat to condemn ROCKWOOL's property if ROCKWOOL does not sell it to the BOE for bottom dollar is not only improper, it is unlawful.

14.    In this case, ROCKWOOL seeks (i) a declaration that the BOE's threat to condemn its property is unlawful; (ii) an injunction preliminarily and permanently enjoining the BOE from interfering with ROCKWOOL's property rights; and (iii) an award of its attorney's fees and costs.

## PARTIES

15.    ROCKWOOL is a Delaware corporation with its principal place of business in Byhalia, Mississippi, and authorized to do business in the State of West Virginia. ROCKWOOL manufactures a full range of stone wool products for the retail, commercial, and industrial markets.

16.    The BOE is a county board of education organized under W. Va. Code § 18-5-1 *et seq.* with its principal place of business in Charles Town, West Virginia.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 over ROCKWOOL's claims arising under the Constitution of the United States. This Court has jurisdiction under 28 U.S.C. § 1367 over ROCKWOOL's claims arising under the Constitution and common law of the State of West Virginia because they form part of the same case or controversy as ROCKWOOL's federal claims.

18.    Alternatively, this Court has jurisdiction under 28 U.S.C. § 1332 because the value of the injunctive relief sought exceeds the sum or value of $75,000, exclusive of interest and costs, and the matter is between citizens of different States.

---

[3] *Lingle v. Chevron*, 544 U.S. 528, 543 (2005).

[4] *See, e.g., Earth Mgmt. Inc. v. Heard County*, 283 S.E.2d 455 (Ga. 1981); *Borough of Essex Fells v. Kessler Inst. for Rehab., Inc.*, 673 A.2d 856 (N.J. Sup. 1995); and *Pheasants Ridge Assocs. v. Town of Burlington*, 508 N.E.2d 1152 (Mass. App. 1987).

19.   This Court has venue under 28 U.S.C. § 1391 because all defendants are residents of the State of West Virginia, and it is brought in the judicial district in which one or more of the defendants resides.

## ALLEGATIONS

20.   This action is about the BOE's corruption of its condemnation authority to selectively target ROCKWOOL for discrimination and retaliation. The BOE singled ROCKWOOL out because ROCKWOOL has refused the BOE's demands to pause construction and operation of a lawfully-permitted facility and has instead insisted on exercising its legal rights.

21.   In early 2017, a group of state and local governmental entities invited ROCKWOOL to visit Jefferson County, West Virginia, to promote different sites for a new $150 million facility that would, at full operating capacity, create at least 140 good-paying jobs.

22.   During one of ROCKWOOL's early visits, those same state and local governmental entities identified what they represented as an ideal site – part of an approximately 400 acre tract in the City of Ranson, which was owned by Jefferson Orchards, Inc.

23.   The state and local governmental entities then promised ROCKWOOL a variety of economic incentives to induce ROCKWOOL to select the property they had advertised and promoted, and in mid-Spring 2017, ROCKWOOL accepted.

24.   And so, from mid-Spring 2017 through Fall 2017, ROCKWOOL closed on the property for its new facility and began to apply for and receive the various incentives and governmental approvals it needed to operate.

25.   As part of that process, ROCKWOOL entered into the PILOT with several local governmental entities, including the BOE.

26.   When the BOE signed the PILOT on September 25, 2017, it expressly represented that "the agreements herein contained and the consummation of the transaction in connection herewith will promote the public interest and public purposes by, among other things, providing certainty and soundness in fiscal planning and promoting the present and prospective prosperity,

health, happiness, safety, and general welfare of the public school students in Jefferson County." [PILOT § 1.02(b)].

27.   By signing the PILOT, the BOE also agreed to the "acquisition, construction and equipping" of ROCKWOOL's facility. [PILOT § 1.02(c)].

28.   Just shy of a year later, however, Jefferson County area residents started to express concerns about the environmental and health impacts of ROCKWOOL's planned operations, and the BOE called for ROCKWOOL to pause construction.

29.   The BOE recognized, however, that it had no legal right to demand that relief as ROCKWOOL had obtained all the necessary environmental and building permits for its activities. In light of this reality, the BOE and ROCKWOOL agreed to an independent human health risk assessment and air monitoring stations (collectively the "HHRA Work") at a cost of more than $1 million dollars, all to confirm what state and federal regulators at the United States Environmental Protection Agency and West Virginia Department of Environmental Protection had already concluded: the facility would not pose a risk to human health.

30.   Although under no legal obligation, ROCKWOOL agreed to fund the HHRA Work.

31.   ROCKWOOL accordingly has spent the past eight months and thousands of dollars working with the BOE in a good faith attempt to identify and engage a consultant to perform the HHRA Work according to the BOE's standards for scientific qualifications and independence. All the while, ROCKWOOL has continued to invest millions of dollars in developing its facility in reliance on the BOE's representation that it would not, and could not, halt construction. Those costs currently exceed $47 million.

32.   ROCKWOOL has also incurred substantial expense to contribute $5.3 million to help fund a $5.7 million public utility water line extension that, when completed, will service ROCKWOOL's property and many other residents of Jefferson County, including a school.

33.   Then, on April 9, 2019, ROCKWOOL learned the BOE's contractual promises and negotiations were simply a charade.

34.     On that date, the BOE's outside counsel sent ROCKWOOL a letter threatening to condemn the 194.7 acre property where ROCKWOOL is building its new facility under the pretense that the BOE needs it to construct a new Regional Student Support Center.

35.     The BOE estimated the fair market value of ROCKWOOL's property at $7,000 per acre, or $1.3629 million in total.

36.     On the same day the BOE threatened to condemn ROCKWOOL's property, BOE Superintendent Dr. Bondy Shay Gibson sent Michael Zarin, Vice President, Group Communications, ROCKWOOL Group, a text message claiming the Regional Student Support Center was part of "an ambitious education program that we have been committed to for some time for our special needs population."

37.     Incredibly, the BOE has continued to ask ROCKWOOL to fund the air monitor portion of the HHRA Work even *after* threatening to condemn the property where the facility would be located.

38.     And though the BOE has deliberately kept its plans for the ROCKWOOL property secret, there are multiple indications that the Regional Student Support Center is a pretext for the BOE's targeting and retaliation against ROCKWOOL for exercising its legal rights to build a lawfully-permitted facility.

39.     Before April 9, 2019, for instance, the BOE never discussed the Regional Student Support Center with ROCKWOOL or alerted ROCKWOOL that its property could be condemned for that purpose.

40.     Upon information and belief, the BOE also has held *zero* public hearings, budgeted *zero* funds, and considered *zero* alternative sites for a project that, by its own description, will cost tens of millions of dollars.

41.     In addition, the decommissioning work (removal of foundations, vast amounts of piping, conduits, and other structures) that would be needed to make ROCKWOOL's property

suitable for the Regional Student Support Center would likely *double* the true cost of this site in comparison to other sites in Jefferson County.

42.     Because utilities are not currently available on-site, the BOE also would need to arrange for utility service at substantial expense to either taxpayers or ratepayers, or both.

43.     These facts are all the more remarkable because *the BOE already owns approximately 150 acres in Ranson* – purchased in January 2018 – that, upon information and belief, would be equally suited to the Regional Student Support Center without requiring the condemnation of ROCKWOOL's property or the additional expenditure of public monies. Barring that option, upon information and belief, the BOE also could have purchased the nearly identically-sized tract next to ROCKWOOL's property from its owners.

44.     At bottom, then, it is simply unbelievable that, after months of demanding without any legal right that ROCKWOOL pause construction of its facility, the BOE suddenly, and without any prior notice to ROCKWOOL or the public, discovered it needed ROCKWOOL's property to build a Regional Student Support Center.

45.     The BOE's transparent bad faith is not only unjustifiable, it is unlawful.

## COUNT I
## SUBSTANTIVE DUE PROCESS - U.S. CONST. AM. XIV, § 1 & 42 U.S.C § 1983

46.     ROCKWOOL incorporates Paragraphs 1 - 45 by reference as if set forth fully herein.

47.     Under the 14th Amendment to the United States Constitution, the State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. am. XIV, § 1.

48.     ROCKWOOL has constitutionally-protected property rights in its property.

49.     Upon information and belief, the BOE has threatened to condemn ROCKWOOL's property for a Regional Student Support Center having held *zero* public hearings, budgeted *zero*

funds, and considered *zero* alternative sites (including a 150 acre site it already owns) for a project that, by its own description, will cost tens of millions of dollars.

50.     The BOE's actions represent an official action, policy, or decision, shock the conscience, and violate ROCKWOOL's substantive due process rights under the United States Constitution by arbitrarily, capriciously, and in bad faith targeting ROCKWOOL with the threatened condemnation of its property.

<u>COUNT II</u>
**SUBSTANTIVE DUE PROCESS – W. VA. CONST. ART. III, § 10**

51.     ROCKWOOL incorporates Paragraphs 1 - 50 by reference as if set forth fully herein.

52.     Under Section 10, Article III of the West Virginia Constitution, "[n]o person shall be deprived of life, liberty, or property, without due process of law." W. Va. Const. Art. III, § 10.

53.     ROCKWOOL has constitutionally-protected property rights in its property.

54.     Upon information and belief, the BOE has threatened to condemn ROCKWOOL's property for a Regional Student Support Center having held *zero* public hearings, budgeted *zero* funds, and considered *zero* alternative sites (including a 150 acre site it already owns) for a project that, by its own description, will cost tens of millions of dollars.

55.     The BOE's actions represent an official action, policy, or decision, shock the conscience, and violate ROCKWOOL's substantive due process rights under the West Virginia Constitution by arbitrarily, capriciously, and in bad faith targeting ROCKWOOL with the threatened condemnation of its property.

<u>COUNT III</u>
**EQUAL PROTECTION - U.S. CONST. AM. XIV, § 1 & 42 U.S.C § 1983**

56.     ROCKWOOL incorporates Paragraphs 1 - 55 by reference as if set forth fully herein.

57.     Under the 14th Amendment to the United States Constitution, the State shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. am. XIV, § 1.

58.     Upon information and belief, the BOE has intentionally treated ROCKWOOL differently than other similarly-situated businesses by, among other things, demanding ROCKWOOL stop construction, negotiating for the HHRA Work, and threatening to condemn ROCKWOOL's property.

59.     The BOE's actions represent an official action, policy, or decision lacking any legitimate governmental interest, or motivated by animus or ill-will, in violation of equal protection under the United States Constitution.

<u>COUNT IV</u>
**EQUAL PROTECTION – W. VA. CONST. ART. III, § 10**

60.     ROCKWOOL incorporates Paragraphs 1 - 59 by reference as if set forth fully herein.

61.     Under Section 10, Article III of the West Virginia Constitution, "[n]o person shall be deprived of life, liberty, or property, without due process of law." W. Va. Const. Art. III, § 10.

62.     "The concept of equal protection of the laws is inherent in article three, section ten of the West Virginia Constitution, and the scope and application of this protection is coextensive or broader than that of the fourteenth amendment to the United States Constitution." Syl. Pt. 3, *Robertson v. Goldman*, 179 W. Va. 453, 369 S.E.2d 888 (1988).

63.     Upon information and belief, the BOE has intentionally treated ROCKWOOL differently than other similarly-situated businesses by, among other things, demanding ROCKWOOL stop construction, negotiating for the HHRA Work, and threatening to condemn ROCKWOOL's property.

64.     The BOE's actions represent an official action, policy, or decision lacking any legitimate governmental interest, or motivated by animus or ill-will, in violation of equal protection under the West Virginia Constitution.

## COUNT V
## TAKINGS – U.S. CONST. AM. V & 42 U.S.C. § 1983

65.     ROCKWOOL incorporates Paragraphs 1 - 64 by reference as if set forth fully herein.

66.     Under the Fifth Amendment to the United States Constitution, as incorporated to the States under the 14th Amendment, "private property [shall not] be taken for public use, without just compensation." U.S. Const. am. V.

67.     If a government taking is not for a public use, or is so arbitrary or capricious to violate due process, "no amount of compensation can authorize such action." *Lingle v. Chevron*, 544 U.S. at 543.

68.     Upon information and belief, the BOE has threatened to condemn ROCKWOOL's property for a Regional Student Support Center having held *zero* public hearings, budgeted *zero* funds, and considered *zero* alternative sites (including a 150 acre site it already owns) for a project that, by its own description, will cost tens of millions of dollars.

69.     The BOE has targeted and retaliated against ROCKWOOL for exercising its legal rights to build a lawfully-permitted facility.

70.     The BOE's actions represent an official action, policy, or decision that is arbitrary, capricious, and in bad faith in violation of protections against takings under the United States Constitution.

## COUNT VI
## TAKINGS – W. VA. CONST. ART. III, § 9

71.     ROCKWOOL incorporates Paragraphs 1 - 70 by reference as if set forth fully herein.

72.     Under Section 9, Article III of the West Virginia Constitution, "[p]rivate property shall not be taken or damaged for public use, without just compensation." W. Va. Const. Art. III, § 9.

73.     "The property may lawfully be taken if the applicant's expressed use of the property is, in fact, a public one, and the condemnation is not impelled by bad faith or arbitrary and capricious motive." Syl. Pt. 1, in part, *Gomez v. Kanawha Cty. Comm'n*, 237 W. Va. 451, 787 S.E.2d 904 (2016).

74.     Upon information and belief, the BOE has threatened to condemn ROCKWOOL's property for a Regional Student Support Center having held *zero* public hearings, budgeted *zero* funds, and considered *zero* alternative sites (including a 150 acre site it already owns) for a project that, by its own description, will cost tens of millions of dollars.

75.     The BOE has targeted and retaliated against ROCKWOOL for exercising its legal rights to build a lawfully-permitted facility.

76.     The BOE's actions represent an official action, policy, or decision that is arbitrary, capricious, and in bad faith in violation of protections against takings under the West Virginia Constitution.

## COUNT VII
## PREEMPTION – W. VA. CODE § 22-1-1 ET SEQ.

77.     ROCKWOOL incorporates Paragraphs 1 - 76 by reference as if set forth fully herein.

78.     The BOE has only those powers delegated to it by the West Virginia Legislature.

79.     The Legislature has not delegated to the BOE any authority to act in the field of environmental regulation.

80.     ROCKWOOL has obtained environmental permits from the West Virginia Department of Environmental Protection under which it is authorized to construct and operate a facility.

81.     The BOE's threatened condemnation of ROCKWOOL's property is an attempt to regulate – that is, to prohibit – what the State has permitted, and is preempted under Chapter 22 of the West Virginia Code.

## COUNT VIII
### ESTOPPEL

82.     ROCKWOOL incorporates Paragraphs 1 - 81 by reference as if set forth fully herein.

83.     The BOE promised ROCKWOOL that it agreed to the "acquisition, construction and equipping" of ROCKWOOL's facility. [PILOT § 1.02(c)].

84.     ROCKWOOL reasonably relied on that promise, which was made in a binding agreement approved in a resolution adopted by Members of the BOE.

85.     It was foreseeable to the BOE when the promise was made that ROCKWOOL would rely on the promise and would not locate its facility in Jefferson County if the BOE would oppose it.

86.     ROCKWOOL has, to date, spent more than $47 million on permitting, constructing, and extending utilities to its facility in reliance on the BOE's promise such that the BOE's threatened condemnation of its property would be unjust.

## COUNT IX
### DECLARATORY JUDGMENT – 28 U.S.C. § 2201 ET SEQ.

87.     ROCKWOOL incorporates Paragraphs 1 - 86 by reference as if set forth fully herein.

88.     Under 28 U.S.C. § 2201 *et seq.*, the Court may declare the rights and other legal relations of any interested party seeking a declaration.

89.     An actual and justiciable controversy exists between ROCKWOOL and the BOE regarding the BOE's authority to threaten the condemnation of ROCKWOOL's property.

90.    For the reasons set forth above, ROCKWOOL is entitled to a declaration that the BOE's threatened condemnation of its property is preempted under W. Va. Code § 22-1-1 *et seq.*, barred by estoppel, and in violation of State and Federal constitutional protections relating to substantive due process, equal protection, and takings.

**COUNT X**
**INJUNCTIVE RELIEF**

91.    ROCKWOOL incorporates Paragraphs 1 - 90 by reference as if set forth fully herein.

92.    ROCKWOOL is likely to prevail on the merits of its claims because the BOE's threatened condemnation is preempted by W. Va. Code § 22-1-1 *et seq.*, because the BOE has made promises upon which ROCKWOOL reasonably relied to its detriment, and because the BOE has acted arbitrarily, capriciously, and in bad faith in violation of State and Federal constitutional guarantees relating to substantive due process, equal protection, and takings.

93.    If BOE is not enjoined from the threatened condemnation of its property, ROCKWOOL will be immediately and irreparably harmed through construction delays and negative impacts on bond financing for sewer utility improvements. Significantly, these costs—and other permitting, construction, and utility costs not reflected in the property's fair market value—would not be compensable in a condemnation proceeding.

94.    The BOE will not be harmed because it is estopped and preempted from its threatened condemnation of ROCKWOOL's property and it has no legal right to do so for arbitrary, capricious, and bad faith reasons. In addition, ROCKWOOL believes there are alternative sites available to the BOE (including a site the BOE already owns) for development of a Regional Student Support Center.

95.    The balancing of the equities favors ROCKWOOL because of the greater harm it will experience without an injunction and because the BOE acted in bad faith by allowing

ROCKWOOL to incur substantial costs associated with permitting, constructing, and extending utilities to its facility.

96.     The public has a compelling interest in enjoining governmental entities like the BOE from corrupting their condemnation authority to target and retaliate against persons engaging in unpopular activities or holding unpopular views.

## PRAYER FOR RELIEF

**WHEREFORE**, ROCKWOOL requests that the Court enter:

(i)     an Order temporarily restraining the BOE from taking any action in furtherance of condemning ROCKWOOL's property;

(ii)    an Order preliminarily enjoining the BOE from taking any action in furtherance of condemning ROCKWOOL's property;

(iii)   an Order declaring that the BOE's threatened condemnation of ROCKWOOL's property is preempted, barred by estoppel, and in violation of State and Federal constitutional protections relating to substantive due process, equal protection, and takings;

(iv)    an Order permanently enjoining the BOE from taking any action in furtherance of condemning ROCKWOOL's property; and

(v)     an Order awarding ROCKWOOL its reasonable costs and attorney's fees incurred in prosecuting this action under 42 U.S.C. § 1988 and the common law.

## JURY TRIAL DEMANDED

*       *       *

**ROXUL USA, INC., d/b/a ROCKWOOL**

/s/ James A. Walls
James A. Walls (WV Bar # 5175)
Joseph V. Schaeffer (WV Bar # 12088)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26507-0615
Ph. 304.291.7952
Fax 304.291.7979
jwalls@spilmanlaw.com
jschaeffer@spilmanlaw.com

11719421

15

## VERIFICATION

ARLINGTON COUNTY,

COMMONWEALTH OF VIRGINIA, to-wit:

I, Peter Regenberg, make this declaration under 28 U.S.C. § 1746 and state:

1.      That I am a resident of the state of Tennessee and I am more than 18 years of age and not subject to any legal disabilities;

2.      That I am Vice President, United States Operations, and Assistant Secretary ROXUL USA Inc. d/b/a ROCKWOOL;

3.      That I am authorized to execute this verification on behalf of Roxul USA, Inc., d/b/a ROCKWOOL, which is a wholly-owned subsidiary of ROCKWOOL International A/S;

4.      That I have read the foregoing **Complaint** and know the contents thereof;

5.      That the facts set forth therein are true or that I am informed and believe them to be true; and

6.      That I declare under penalty of perjury that the foregoing is true and correct.

\*          \*          \*

Executed on April 11, 2019

Peter Regenberg

16