# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROXUL USA, INC.,**
**a Delaware corporation,**

       **Plaintiff,**

**v.**

**BOARD OF EDUCATION OF THE**
**COUNTY OF JEFFERSON,**
**a West Virginia county board of education,**

       **Defendant.**

**Civil Action No. 3:19-cv-00054-GMG**
**(Judge Groh)**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

Eighteen months after joining other state and local governmental entities to induce ROCKWOOL to build a new, $150 million manufacturing facility in Ranson, West Virginia, the Board of Education of the County of Jefferson (the "BOE") has changed its position on the project in response to public pressure fueled by half-truths and speculation.[1] Citing the need for a Regional Student Support Center, the BOE offered to buy ROCKWOOL's property for $1.3629 million—a mere fraction of the amount ROCKWOOL has already invested in it—and if ROCKWOOL rejected the BOE's offer, the BOE threatened to condemn the property. Yet, the BOE never disclosed the Regional Student Support Center to ROCKWOOL, has not discussed it in public meetings, has not budgeted for it, and has not considered other viable sites (including an unimproved 150 acre tract the BOE already owns). The BOE's blatant abuse of its power thus violates multiple legal principles and protections including State and Federal constitutional guarantees relating to substantive due process, equal protection, and takings, as well as preemption and estoppel. ROCKWOOL therefore is entitled to a temporary restraining order ("TRO") or preliminary injunction prohibiting the BOE from taking any action in furtherance of condemning ROCKWOOL's property.

---

[1] ROCKWOOL is the trade name for Roxul USA, Inc.

## SUMMARY OF RELEVANT FACTS

1.      The ROCKWOOL group of companies were founded in Denmark in 1937, and they are the world's leading manufacturers of environmentally-friendly stone wool insulation. [Compl. ¶ 1].[2]

2.      In late 2016 and in 2017, ROCKWOOL considered 50 sites in 10 states as a location for its new, $150 million insulation manufacturing facility in the United States. The new facility would, at full operating capacity, create at least 140 new, high-paying jobs. Ranson, West Virginia was one of the sites ROCKWOOL considered. [Compl. ¶ 2].

3.      ROCKWOOL was recruited to Ranson by a wide array of state and local officials. In connection with those recruiting efforts, the Jefferson County Commission, the Sheriff of Jefferson County, the Jefferson County Assessor, the Ranson City Council, **and the BOE** offered ROCKWOOL tax incentives if it agreed to build its new facility in Ranson.[3] [Compl. ¶ 3].

4.      ROCKWOOL accepted that offer, closed on property in Ranson, and began site preparation and construction in November 2017. To date, ROCKWOOL has spent more than $47 million on permitting, constructing, and extending utilities to its new facility. [Compl. ¶ 3-4].

5.      Recently, the BOE had a change of heart. Bowing to public pressure created and fueled by half-truths and factual distortions, the BOE now opposes the new facility. For instance, it has very publicly demanded a moratorium on construction, and it has repeatedly threatened to terminate an agreement forming part of ROCKWOOL's property tax incentives. Privately, however, the BOE has acknowledge it has no right to take either action. [Compl. ¶ 7].

6.      On April 9, 2019, the BOE tried a different tact—it told ROCKWOOL it had longstanding plans to construct a Regional Student Support Center and offered to buy 194.7 acres

---

[2] Under Fed. R. Civ. P. 65(b)(1)(a), ROCKWOOL may incorporate by reference its verified Complaint to support immediate and irreparable harm justifying a TRO.

[3] A copy of the Payment in Lieu of Taxation Agreement (the "PILOT") forming part of ROCKWOOL's property tax incentives is attached to ROCKWOOL's Complaint as **Exhibit A**.

of ROCKWOOL's property for a fraction of what ROCKWOOL has spent to develop it. If ROCKWOOL rejected the offer, the BOE threatened to condemn the property.[4] [Compl. ¶ 7].

7.     Notably, the BOE could have located this Regional Student Support Center *on the approximately 150 contiguous acres of undeveloped property the BOE already owns in Ranson*. Barring that option, upon information and belief, the BOE could have purchased the nearly identically-sized tract next to ROCKWOOL's property from its owners. [Compl. ¶ 8].

8.     Instead, the BOE threatened to condemn ROCKWOOL's property where it is building its facility. [Compl. ¶ 9].

9.     The BOE's motive is transparent: by threatening to condemn ROCKWOOL's property, the BOE intends to prohibit ROCKWOOL's lawful activities over which the BOE has *zero* regulatory authority. [Compl. ¶ 10].

## LEGAL STANDARD

The Court is authorized to enter a TRO or preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. Although both TROs and preliminary injunctions are subject to the same standard, a party seeking a temporary restraining order must additionally (a) certify in writing the efforts made to provide notice to the adverse party and (b) set forth the facts supporting immediate and irreparable injury or loss in an affidavit or verified complaint. Fed R. Civ. P. 65(b).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Proof must be by a "clear showing," *id.* at 22, and "particular regard" must be given to the public interest, *id.* at 24.

---

[4] A copy of the BOE's April 9, 2019 letter to ROCKWOOL is attached to ROCKWOOL's Complaint as **Exhibit B**.

## ARGUMENT

The BOE should be enjoined from taking in any action to condemn ROCKWOOL's property because that action is prohibited under State and Federal Constitutional protections relating to substantive due process, equal protection, and takings, and moreover, is preempted and barred by estoppel.

**ROCKWOOL is likely to prevail on the merits of its claims.**

**The constitutional claims:**   The West Virginia and United States Constitutions both establish strong protections against takings of private property:  private property shall not be taken or damaged for public use, without just compensation. W. Va. Const. Art. III, § 9 and U.S. Const. am. V & XIV. No public use and no amount of compensation, however, can authorize a taking that is arbitrary, capricious, or motivated by bad faith. *See Lingle v. Chevron*, 544 U.S. 528, 543 (2005); Syl. Pt. 1, *Gomez v. Kanawha Cty. Comm'n*, 237 W. Va. 451, 787 S.E.2d 904 (2016) (holding that a condemnation must serve a public purpose and may not be "impelled by bad faith or arbitrary and capricious motive").

In prohibiting condemnation for arbitrary, capricious, or bad faith motives, takings jurisprudence incorporates concepts of substantive due process and equal protection. Substantive due process protections under the West Virginia and United States Constitutions, for instance, prohibit the government from depriving a person of a protected property interest through arbitrary and capricious acts. *See State v. Leadingham*, 190 W. Va. 482, 490-91, 438 S.E.2d 825, 833-34 (1993) (identifying substantive due process protections in U.S. Const. am. V and XIV and W. Va. Const. Art. III, § 10, which prohibit the government from abusing its authority or engaging in conduct that shocks the conscience). Similarly, equal protection under the 14th Amendment to the United States Constitution prohibits the government from intentionally treating persons differently without a legitimate governmental interest or for reasons motivated by animus or ill-will. *Village of Willowbrook v. Olech*, 528 U.S. 362 (2000) (*per curiam*).  This same equal protection rule applies under Section 10, Article III of the West Virginia Constitution, whose "concept … is coextensive

or broader than that of the fourteenth amendment to the United States Constitution." Syl. Pt. 3, in part, *Robertson v. Goldman,* 179 W. Va. 453, 369 S.E.2d 888 (1988).

The evidence supporting these constitutional claims is clear and convincing. The BOE signed the PILOT in which it agreed to "acquisition, construction and equipping" of ROCKWOOL's facility. When the BOE did so, it knew ROCKWOOL would rely on that representation to select Ranson for its new facility and would begin investing the approximately $150 million needed to complete it. And even after the BOE began to renege on its support for the facility—by demanding ROCKWOOL pause construction and questioning its commitment to the PILOT—the BOE continued to negotiate with ROCKWOOL over the conditions for a human health risk assessment and air monitoring stations (the "HHRA Work"). Accordingly, until it sent ROCKWOOL a letter threatening condemnation on April 9, 2019, the BOE affirmatively led ROCKWOOL to believe it would not take any action to stop the construction and operation of ROCKWOOL's facility. Simply put, the BOE has offered ROCKWOOL $1.3629 million in compensation for a property where the BOE has knowingly allowed ROCKWOOL to make more than $47 million in improvements.

Making matters worse, the BOE's proposed public use of a Regional Student Support Center is an obvious pretext. Although the Regional Student Support Center would be a monumental development—costing tens of millions of dollars—the BOE did not provide for it in the Fiscal Year 2019 budget and has not discussed it at any meetings over the past several months. Additionally, the BOE has other location options that it seems to have simply ignored. For instance, the BOE could have purchased the tract neighboring ROCKWOOL's property; it has nearly identical acreage, all the same geographic advantages, and is believed to actually be for sale. Or the BOE could have used the unimproved 150 acre tract it purchased in Ranson in January 2018. That the BOE did not do so is proof of its true purpose: to prevent ROCKWOOL from constructing and operating its lawfully-permitted facility by taking its property.

The BOE simply does not have that authority. In *Earth Management, Inc. v. Heard County*, for instance, the Supreme Court of Georgia disallowed the condemnation of private property for a public park where "the obvious purpose [was for] preventing the land from being used as a hazardous waste facility." 248 Ga. 442, 447, 283 S.E.2d 455, 461 (1981). As ROCKWOOL believes discovery will show here, "[n]o other land was ever considered … and no on-site surveying, planning or inspection was done prior to its condemnation." *Id.* at 447, 461. Likewise, in *Borough of Essex Fells v. Kessler Inst. for Rehab., Inc.*, the Superior Court of New Jersey dismissed a condemnation petition where it found that the condemning authority's true purpose was the bad faith attempt "to prevent a proposed development which is considered undesirable." 289 N.J. Super. 329, 339, 673 A.2d 856, 861 (1995). Both of these decisions—and several others across the country—rest on the same bad faith limitation on condemnation found in the West Virginia and United States constitutions. *See id.* at 338, 673 A.2d 861 (collecting cases).

For these reasons, ROCKWOOL is likely to prevail on the merits of its constitutional claims relating to substantive due process, equal protection, and takings.

**Preemption:** In *EQT Prod. Co v. Wender*, the Fourth Circuit Court of Appeals considered the lawfulness of a ban on underground injection control wells and related activities that was adopted by the County Commission of Fayette County, West Virginia. 870 F.3d 322 (4th Cir. 2017). Like the BOE in Jefferson County, the County Commission in Fayette County was concerned about State-sanctioned industrial activities, and so it banned them. *Id.* On appeal, the Fourth Circuit framed the question as "whether a West Virginia county is authorized to take aim at the permitted activity itself, enacting a blanket prohibition on conduct specifically licensed by the state." *Id.* at 332. Because local governments have only those powers conferred by the Legislature, the Fourth Circuit held that, "[u]nder well-established principles of West Virginia law, the answer to that question is no." *Id.* So too here.

By threatening to condemn ROCKWOOL's property, the BOE intends to achieve the same unlawful result as the Fayette County Commission: prohibiting ROCKWOOL from engaging in

activity licensed by the State. And where the BOE is motivated by environmental and health concerns wholly outside its jurisdiction, the illegality of its actions is even more obvious. ROCKWOOL is therefore likely to prevail on the merits of its preemption claim.

**Estoppel**: Estoppel applies when "a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact." *Parsons v. Standard Ins. Co.*, 185 F. Supp. 3d 909, 913 (N.D.W. Va. 2016) (quoting *Bradley v. Williams*, 195 W. Va. 180, 185 465 S.E.2d 180, 185 (1995)). Here, ROCKWOOL was induced to locate its facility in Ranson based on promises from state and local governmental entities, including the BOE, that they agreed to its "acquisition, construction and equipping." Those promises were reduced to writing in the PILOT, and then adopted by the BOE in a formal resolution. And so ROCKWOOL reasonably relied on those promises to invest more than $47 million in the permitting, construction, and extension of utilities to its facility. ROCKWOOL would not have undertaken that investment if the BOE had identified ROCKWOOL's property as a target for condemnation. Yet, if the BOE is allowed to proceed with its threatened condemnation of ROCKWOOL's property, ROCKWOOL will receive only pennies on the dollar for the investment the BOE induced.

ROCKWOOL therefore is likely to prevail on the merits of its estoppel claim.

**ROCKWOOL will suffer irreparable harm without an injunction.**

The BOE has offered ROCKWOOL $1.3629 million for property in which ROCKWOOL has invested more than $47 million. And though the BOE's offer is unfairly low, it seems probable that ROCKWOOL would never recover anything approaching its investment into its property. Additionally, ROCKWOOL has agreed to contribute $5.3 million to help fund a $5.7 million public utility water line extension that, when completed will service ROCKWOOL's property and many other residents of Jefferson County, including a school. ROCKWOOL will lose the benefit of this investment, as well, if its property is condemned. None of these damages is adequately compensable in a condemnation action. But the truly irreparable harm is the delay to ROCKWOOL's

much-needed production capacity. As indicated, ROCKWOOL's search for a new factory site to meet its customers' needs began back in late 2016 and the new factory is scheduled to open in mid-2020 just in time to supply products to meet its customer demand. Should ROCKWOOL's ability to open its new production facility be impacted by construction delays or the need to start its site selection search afresh, its ability to meet its customer demand will be significantly crippled for a period of three years or longer. That inability to meet demand would not only have a tremendous financial impact but would result in lost customers and market share.

**The balancing of the equities favors ROCKWOOL.**

Without a TRO or injunction, ROCKWOOL will experience construction delays and increased costs even if it ultimately prevails the merits. The BOE, by contrast, can find another location for its Regional Student Support Center (such as the unimproved 150 acre tract in Ranson it already owns) or simply wait for these proceedings to conclude. The balancing of the equities therefore favors ROCKWOOL.

As a more fundamental principle, however, *the BOE has unclean hands and no right to appeal to equity*. The BOE helped induce ROCKWOOL to locate in Ranson and then knowingly allowed ROCKWOOL to invest more than $47 million in permitting, constructing, and extending utilities to its new facility. And for the past several weeks, at least, the BOE has been negotiating with ROCKWOOL over HHRA Work relating to a facility it had no intention of allowing ROCKWOOL to complete. At bottom, the BOE's threatened condemnation is built on a foundation of arbitrary, capricious, and bad faith conduct.

**The public interest favors injunctive relief.**

The public has an undeniable interest in the enforcement of the law and the protection of private property rights. *See Marfork Coal Co. v. Smith*, No. CIV.A. 5:10-CV-00069, 2010 WL 742560, *6 (S.D.W. Va. Feb. 26, 2010) (issuing injunction against trespass). Yet the public interest here is far more substantial than simple law and order. The crux of this matter is the BOE's deliberate choice to single ROCKWOOL out for disparate treatment because the BOE doesn't like what ROCKWOOL proposes to do with its property. Regardless of where the public stands on

8

ROCKWOOL specifically, every member of the public has an interest in a TRO or injunction that prohibits the government from weaponizing its condemnation authority against disfavored members of society.

**No bond should be required.**

The Court should not require ROCKWOOL to post a bond because the BOE has no legal right to condemn ROCKWOOL's property and, on information and belief, is in only the earliest planning stages for its Regional Student Support Center. The BOE accordingly will not be damaged if a TRO or injunction is later found to have been improvidently granted.

CONCLUSION

**WHEREFORE**, ROCKWOOL requests that the Court enter an Order:

(i)     temporarily restraining the BOE from taking any action in furtherance of condemning ROCKWOOL's property;

(ii)    in the alternative, preliminarily enjoining the BOE from taking any action in furtherance of condemning ROCKWOOL's property; and

(iii)   granting such other relief as the Court deems just and proper.

*     *     *

**ROXUL USA, INC., d/b/a ROCKWOOL**


/s/ James A. Walls
James A. Walls (WV Bar # 5175)
Joseph V. Schaeffer (WV Bar # 12088)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26507-0615
Ph. 304.291.7952
Fax 304.291.7979
jwalls@spilmanlaw.com
jschaeffer@spilmanlaw.com

11718960

9