IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROXUL USA, INC.,
a Delaware corporation,

      Plaintiff,

v.            Civil Action No. 3:19-CV-54
                     (Judge Groh)

BOARD OF EDUCATION OF THE
COUNTY OF JEFFERSON,
a West Virginia county board of education,

      Defendant.

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR ABSTAIN

      The Board of Education of the County of Jefferson's (the "BOE") motion to dismiss is premised on the belief that sheer audacity can shield its actions from scrutiny. This is false. The BOE's condemnation power is not so broad that it can arbitrarily or capriciously target ROCKWOOL's property for condemnation.[1] Nor is this Court required to abstain because the BOE rushed to file state court condemnation proceedings immediately after this action was commenced—a transparent and fruitless attempt to divest this court of jurisdiction. The injury here is complete, and ROCKWOOL's federal constitutional claims are properly before this Court.

      As the Supreme Court wrote nearly 60 years ago:

> When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right. … Acts generally lawful may become unlawful when done to accomplish an unlawful end, and a constitutional power cannot be used by way of condition to attain an unconstitutional result.

*Gomillion v. Lightfoot*, 364 U.S. 339, 346 (1960) (internal citations omitted).

      This Court should therefore deny the BOE's motion to dismiss.

---

1 ROCKWOOL is the trade name for Roxul USA, Inc.

## INTRODUCTION AND PROCEDURAL HISTORY

In 2016 and 2017, ROCKWOOL was recruited to locate a new $150 million manufacturing facility in Jefferson County, West Virginia. The BOE was one of the governmental entities that helped finalize the deal when, in September 2017, it signed a payment in lieu of taxation agreement ("PILOT") forming part of a tax-incentive package. Critically, the BOE agreed in the PILOT to the "acquisition, construction and equipping" of ROCKWOOL's facility. [ECF No. 18-1, at § 1.02(c)].

ROCKWOOL has relied on that agreement to invest more than $47 million in constructing its facility, not including the additional $5.3 million it has committed to water infrastructure improvements. Throughout that process, the BOE gave no indication it was considering condemning ROCKWOOL's property for a Regional Student Support Center. In fact, the BOE gave no indication that it was planning for a Regional Student Support Center, at all.

Then, on April 9, 2019, the BOE sent ROCKWOOL a letter offering to purchase its property for $1.3269 million and threatening to condemn the property if ROCKWOOL refused. Both the BOE's timing and its justification were implausible. So far as ROCKWOOL could determine, the BOE already has 260+ acres of unimproved property dedicated to projects the BOE cannot afford to develop. And together with the substantial public pressure to stop ROCKWOOL, and the BOE's own statement that it would take "any and all legal, ethical courses of action to oppose the enactment of the [PILOT]," the BOE's selection of ROCKWOOL's property for condemnation had every hallmark of a pretext—particularly where the BOE appeared to have foregone any evaluation of alternative sites.[2]

Multiple courts have forbidden governments from exercising their condemnation authority in similar cases of arbitrariness, capriciousness, or bad faith because "no amount of compensation can authorize such action." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005).[3]

---

[2] *See* February 7, 2019, Letter from Dr. Bondy Shay Gibson to Michael Zarin, a copy of which is attached hereto as **Exhibit A**.
[3] *See, e.g., Hunt v. Ziegler*, 86 N.W.2d 345 (Mich. 1957) *overruled on other grounds by Greenfield Const. Co., Inc. v. Michigan Dept. of State Highways*, 261 N.W.2d 718 (Mich. 1978); *Pheasant Ridge Associates v. Town of Burlington*, 506 N.E.2d 1152 (Mass. 1987); *Carroll Cty. v. City of Bremen*, 347 S.E.2d 598 (Ga. 1986); *Earth Management,*

ROCKWOOL thus immediately filed its complaint and sought injunctive relief against the BOE's threatened condemnation. As Justice Brennan has noted, "[i]n a suit to enforce fundamental constitutional rights, the plaintiff's choice of a federal forum has singular urgency." *Preiser v. Rodriguez*, 411 U.S. 475, 515 (1973) (Brennan, J., dissenting). And so ROCKWOOL deliberately chose to file its complaint and seek relief in this Court.

Yet fewer than 30 minutes after being served with ROCKWOOL's complaint and injunction papers on April 12, 2019, the BOE filed a petition for condemnation in the Circuit Court of Jefferson County. Where the Regional Student Support Center is only a germ of an idea, the only explanation for the BOE's haste is a desire to deprive ROCKWOOL of access to its chosen forum.

It is against this backdrop, then, that the BOE has filed its motion to dismiss ROCKWOOL's claims under the Anti-Injunction Act and the doctrines of ripeness and abstention. Most of the BOE's arguments are now moot because ROCKWOOL has voluntarily dismissed its state law claims without prejudice. And the remaining arguments fail on their merits. This Court possesses full jurisdiction over this action, ROCKWOOL's claims are not barred by the Anti-Injunction Act, and they are fully ripe for review and unaffected by the doctrines of abstention. The BOE's motion to dismiss should therefore be denied.

## ARGUMENT

**I.   The Anti-Injunction Act does not bar ROCKWOOL's claims.**

The BOE's only non-prudential jurisdictional argument is based on the Anti-Injunction Act, 28 U.S.C. § 2283, which prohibits a federal court from enjoining state proceedings except as "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." But as the BOE is forced to admit, ROCKWOOL's claims for injunctive relief under 42 U.S.C. § 1983 (Counts I, III, and V of the Amended Complaint) are expressly

---

*Inc. v. Heard County*, 283 S.E.2d 455 (Ga. 1981); *Capital Props., Inc. v. State*, 749 A.2d 1069 (R.I. 1999); *City of Miami v. Wolfe*, 150 So.2d 489 (Fl. App. 1963); *In re Housing Auth. of City of Salisbury, Project NC-16-2*, 235 N.C. 463 (N. C. 1952); *Borough of Essex Fells v. Kessler Inst. for Rehab., Inc.*, 673 A.2d 856 (N.J. Sup. Ct. 1995); *In re Real Prop. in Inc. Vill. of Hewlett Bay Park, Nassau Cty.*, 265 N.Y.S.2d 1006 (N.Y. Sup. Ct. 1966); *Redevelopment Auth. of City of Erie v. Owners or Parties in Interest*, 274 A.2d 244 (1 Pa. Cmwlth. 1971).

3

authorized by Congress and fall under the first exception. [ECF 20, at *6 n.2 (citing *Mitchum v. Foster*, 407 U.S. 225, 243 (1972))]. And since the BOE's motion was filed, ROCKWOOL has dismissed any state law claims to which the Anti-Injunction Act might have applied.

The Anti-Injunction Act thus places no limits on this Court's jurisdiction to hear ROCKWOOL's remaining claims under 42 U.S.C. § 1983.

**II.     ROCKWOOL's claims are ripe for review.**

As the first of its prudential jurisdictional arguments, the BOE asserts that ROCKWOOL's claims are not ripe for review until the Circuit Court of Jefferson County formally condemns ROCKWOOL's property and denies ROCKWOOL just compensation. [ECF No. 20, at *8]. This misses the point and misconstrues the law.

Absent from the BOE's motion is any acknowledgment of a critical limitation on its condemnation power: if a government taking is not for a public use, or is so arbitrary or capricious to violate due process, "no amount of compensation can authorize such action." *Lingle*, 544 U.S. at 543. That is, of course, the entire issue in this case. The BOE has taken what is, at best, the germ of an idea for a Regional Student Support Center and used it as a pretext for condemning ROCKWOOL's property. Far from an "abstract disagreement," the BOE has taken concrete action that will cause ROCKWOOL real harm if the Court withholds consideration. *See, e.g., Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807-08 (2003) (ripeness turns on "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.").

Hence, the BOE's argument that ROCKWOOL has foregone adequate procedures to determine just compensation is simply disingenuous. The BOE knows that ROCKWOOL will not recover anything close to its investment in a state condemnation proceeding. More importantly, ROCKWOOL's injury is the threat and act of condemnation itself.

This case is therefore easily distinguishable from *Williamson Cty. Reg. Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), and *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d

4

506 (2d. Cir. 2014). Whether brought under theories of regulatory takings (*Williamson*) or physical takings (*Kurtz*), both cases were inverse condemnation cases in which the property owners challenged the denial of just compensation. *Williamson*, 473 U.S. at 187-188; *Kurtz*, 758 F.3d at 510.[4] The case of *Henry v. Jefferson Cty. Planning Comm'n* cited by the BOE similarly involved the alleged denial of just compensation, which the court held was unripe because neither the state nor the property owner had initiated condemnation proceedings. No. 3:06-cv-33, 2009 WL 10706968, at *14. By contrast, the question here is not how much compensation ROCKWOOL is due for the taking, but rather whether the taking the BOE has already threatened (and now initiated) may proceed at all.

The ripeness test from *Williamson* thus does not apply to ROCKWOOL's claims. In any case, ROCKWOOL would easily satisfy the two-part *Williamson* test if it did.

A.  *The finality requirement of Williamson is satisfied.*

The first part of the *Williamson* prudential standard for ripeness holds that a takings case is "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. In its motion, the BOE argues that ROCKWOOL does not meet this first element because (1) "the first hearing in the condemnation proceeding is not set until June 3" and (2) "[ROCKWOOL] seeks to procedurally challenge the School Board's April 8, 2019 vote to proceed with condemnation for failure to provide notice under the Open Meetings Act."[5] [ECF 20, at *9]. This misreads *Williamson*.

The first *Williamson* element does not turn on whether legal options have been exhausted; instead, it simply requires that the governing body being sued has made a final decision. 473 U.S. at 186. In *Williamson*, the property owner's case was not ripe because the regional planning

---

[4] In *Williamson*, there was an additional dispute over whether a taking had even occurred because the property owner had not sought variances from the challenged regulation. 473 U.S. at 187-188. There is no such question here: the BOE voted on April 9, 2019, to move forward with the condemnation of its property and, on April 12, 2019, formally filed the state court petition.

[5] The BOE's second argument is moot because ROCKWOOL has dismissed its Open Meetings Act claim without prejudice.

commission had not yet made a final decision on whether, and to what extent, the owner would be able to develop its property. *Id.* at 187-88. Here, by contrast, the BOE has already made a final decision to condemn ROCKWOOL's property and has instituted court proceedings to that end. That is all the *Williamson* finality prong requires.

B.  *The inadequate state procedures requirement of Williamson is satisfied.*

The second part of the *Williamson* prudential standard for ripeness holds that a takings case is not ripe if the state "provides an adequate procedure for seeking just compensation" and the party has not used the procedure and been denied just compensation. 473 U.S. at 195. The *Williamson* court held that the property owner failed to meet this prong because it had not attempted to recover just compensation through inverse condemnation proceedings. *Id.* at 196. And so the BOE argues that ROCKWOOL similarly "has not satisfied this requirement because, as it admits, it is not seeking just compensation through the available and pending state court proceedings." [ECF 20, at *9].

What the BOE disregards is that no amount of compensation can authorize a taking marked by arbitrariness, capriciousness, or bad faith. *See Lingle*, 544 U.S. at 543. Thus, ROCKWOOL's primary injury is not the denial of just compensation but rather the act of condemnation itself. Indeed, even if ROCKWOOL could successfully oppose the state court condemnation petition, its mere existence threatens to delay construction and extension of needed utilities to the site, all of which impacts ROCKWOOL's production capacity and market competiveness.[6]

Moreover, for the BOE to refer to the $1.3629 million it has offered ROCKWOOL as "just compensation" is to willfully ignore the facts. The BOE executed the PILOT agreement to induce ROCKWOOL to build its $150 million manufacturing facility on Jefferson County.[7] And in

---

[6] By way of example, Charles Town Utility Board is constructing a sewer project along West Virginia Route 9 using favorable state bond financing that is contingent on ROCKWOOL's industrial economic development and would be unavailable if the property were condemned by the BOE. If completed, this Route 9 sewer project will serve not only ROCKWOOL but also North Jefferson Elementary and select residential neighborhoods—a substantial benefit to the community that will disappear if ROCKWOOL's property is condemned.

7 The PILOT is a tax-incentive agreement. When the BOE signed the PILOT on September 25, 2017, it expressly represented that "the agreements herein contained and the consummation of the transaction in connection herewith will promote the public interest and public purposes by, among other things, providing certainty and soundness in

reliance on that PILOT, ROCKWOOL has invested more than $47 million to date, and has committed an additional $5.3 million to extending a water line to its property. Almost none of that investment is recoverable in a condemnation proceeding.

In a similar case, the Supreme Court of Michigan approved the injunction of a condemnation action because the plaintiffs had taken actions in reliance on a contract with the government entity and could not be properly compensated through the state court condemnation proceedings. In *Hunt v. Ziegler*, a state highway department employee offered to purchase a tavern from its owners for an expressway expansion. 86 N.W.2d 345, 347 (Mich. 1957), *overruled on other grounds by Greenfield Const. Co., Inc. v. Mich. Dept. of State Highways*, 261 N.W.2d 718 (Mich. 1978). The parties reached an agreed-upon price and sale agreement, which the tavern owners relied upon to take out a loan financing the relocation of their business. *Id*. at 347-38. Then, after payment delays coupled with repeated assurances from the state, the state filed condemnation proceedings so it could acquire the land at a lower price. *Id*. at 348. The tavern owners therefore sought and received an injunction, which the Supreme Court of Michigan upheld, holding:

> So far as concerns the question of adequacy of legal remedy, we find that there is no reliable assurance these plaintiffs would be made reasonably whole should they be relegated to suit in the court of claims or the pending condemnation proceedings. Their plight—which includes the burden of an outstanding mortgage loan with nearly 4 years of accrued interest thereon—is not causally attributable to them and it appeals of right to equity. It is due as previously noted to the perfidy of one of the defendant's employees and inexplicable actions of another. Equity alone is properly equipped to deal with the situation we view here.

*Id.* at 352. So too here.

No amount of compensation can justify ROCKWOOL's loss of a $47+ million investment, made in reliance on promises from the BOE, to condemnation proceedings marked by

---

fiscal planning and promoting the present and prospective prosperity, health, happiness, safety, and general welfare of the public school students in Jefferson County." [ECF No. 18-1, § 1.02(b)]. By signing the PILOT, the BOE also agreed to the "acquisition, construction and equipping" of ROCKWOOL's facility. [*Id*., § 1.02(c)].

7

arbitrariness, capriciousness, and bad faith. ROCKWOOL thus satisfies the second *Williamson* element.

**III.     None of the BOE's abstention arguments applies.**

As the second of its prudential jurisdictional arguments, the BOE asserts that this Court should abstain from hearing this case under the *Pullman* or *Younger* doctrines and because condemnation involves "sovereign governmental prerogatives." Missing from the BOE's motion is any acknowledgment it created this alleged jurisdictional conflict. Yet it was the BOE that filed the state court condemnation petition *after* ROCKWOOL filed *and* served the BOE with its complaint and injunction papers in this action. And where the BOE has done nothing to suggest its state court filing was anything more than an attempt to create this abstention argument, the Court should not apply prudential doctrines to deprive ROCKWOOL of its choice of forum. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 71 (2013) (Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction because "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." (internal quotes and citations omitted)).

In any case, none of the abstention arguments advanced by the BOE applies.

A.     *This case does not involve any unique sovereign governmental prerogatives.*

The BOE's first argument for abstention is that this Court should not interfere with "sovereign governmental prerogatives" in the areas of education and land use. [ECF No. 20, at *15]. Yet this action has no impact on the BOE's authority to control or manage its schools. The BOE remains free to develop educational programs and construct new facilities like the Regional Student Support Center. Indeed, the only impact of this action on the BOE is to prohibit it from violating ROCKWOOL's federal constitutional rights in the exercise of its condemnation authority. No sovereign governmental prerogative can take precedence over that fundamental limitation on state power. *See Progress Dev. Corp. v. Mitchell*, 286 F.2d 222, 231 (7th Cir. 1961) (holding that a municipality's use of eminent domain is not shielded from review when that power "is used as an instrument for circumventing a federally protected right.").

Those federal constitutional rights are core matters of the federal courts' concern. As the Supreme Court has held:

> [T]he fact that a case concerns a State's power of eminent domain no more justifies abstention than the fact that it involves any other issue related to sovereignty. Surely eminent domain is no more mystically involved with "sovereign prerogative" than a State's power to regulate fishing in its waters, its power to regulate intrastate trucking rates, a city's power to issue certain bonds without a referendum, its power to license motor vehicles, and a host of other governmental activities carried on by the States and their subdivisions which have been brought into question in the Federal District Courts despite suggestions that those courts should have stayed their hand pending prior state court determination of state law.

*Allegheny Cty. v. Frank Mashuda Co.*, 360 U.S. 185, 191-92 (1959) (internal quotes and citations omitted).

The BOE's case citations to the contrary are readily distinguishable. *Crawford v. Courtney* did not involve a federal constitutional challenge to a condemnation action but simply a dispute over the right to the proceeds. 451 F.2d 489, 490 (4th Cir. 1971). And though citing *Louisiana Power & Light Co v. City of Thibodaux*, 360 U.S. 25 (1959), the *Crawford* court recognized that case involved a "novel question of state law" and established, at most, a discretionary rule. 451 F.2d at 492. Indeed, Justice Stewart's concurring opinion in *Louisiana Power* justified abstention on the basis of the unsettled question of state law and expressly distinguished that case from *Mashuda*, where the controlling state law was clear and "only factual issues need[ed] to be resolved." 360 U.S. at 31.

The BOE's remaining case citations fare no better. The court in *Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.* relegated its discussion of *Louisiana* power to a footnote concluding it had no application. 710 F.2d 170, 174 n. 9 (4th Cir. 1983). The court in *Duty Free Shop, Inc. v. Administracion de Terrenos de Puerto Rico* applied *Younger* abstention in a manner the Supreme Court has since rejected in *Sprint*, 571 U.S. 69. The court in *Harper v. Public Serv. Comm'n of W. Va.* similarly misapplied *Younger* abstention but nonetheless found the constitutional claims so

9

compelling to merit federal jurisdiction. 396 F.3d 348 (4th Cir. 2005). And finally, the court in *MLC Automotive, LLC v. Town of Southern Pines*, involved a zoning dispute—a far lesser imposition on property rights than the total taking advanced by the BOE. 532 F.3d 269 (4th Cir. 2008).

At bottom, then, whatever the local interest in the exercise of condemnation authority, that interest is far outweighed by this Court's obligation to exercise its jurisdiction to uphold federal constitutional rights against local abuse.

B.  *There are no unsettled questions of state law justifying abstention under Pullman..*

The BOE's second argument for abstention relies on *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), which the Fourth Circuit has described as supporting abstention when "there are unsettled questions of state law that may dispose of the case and avoid the need for deciding the constitutional question." *Meredith v. Talbot Cty., Md.*, 828 F.2d 228, 232 (4th Cir. 1987). Much of the BOE's argument for *Pullman* abstention is now moot where ROCKWOOL has voluntarily dismissed its state law claims. [ECF No. 20, at *15-18 (discussing ROCKWOOL's now-dismissed state law claims for estoppel, preemption, state equal protection, and Open Meetings Act violations)]. Regardless, the BOE confuses audacity with uncertainty.

West Virginia law on condemnation is abundantly clear.

> In a condemnation proceeding, the property may lawfully be taken if the applicant's expressed use of the property is, in fact, a public one, and the condemnation is not impelled by bad faith or arbitrary and capricious motives.

Syl. Pt. 1, *Gomez v. Kanawha Cty. Comm'n*, 237 W. Va. 451, 787 S.E.2d 904 (2016). There are no newly enacted or existing, but previously uninterpreted, statutes involved in this action, as was the case in *Meredith* and *Louisiana Power*. *Meredith,* 828 F.2d at 232 (concerning a newly-enacted statute under the Chesapeake Bay Critical Area Protection Program); *Louisiana Power,* 360 U.S. at 30 (concerning an uninterpreted statute and an opinion of the Louisiana Attorney General). Similarly, there is a significant distinction between the regulatory takings cases cited by the BOE,

in which municipal zoning limited the property's use, and the circumstance here, where the BOE is attempting to physically take ROCKWOOL's property in its entirety. *See, e.g., Kent Island Joint Venture v. Smith*, 452 F. Supp. 455, 463 (D. Md. 1978); *N. Virginia Law Sch., Inc. v. City of Alexandra*, 680 F. Supp. 222 (E.D. Va. 1988). Here, all that is required by ROCKWOOL's federal constitutional claims is a factual examination of whether the BOE's condemnation was arbitrary, capricious, or in bad faith. *Gomez*, 237 W. Va. at 455, 787 S.E.2d at 907. The inquiry ends there, and *Pullman* abstention does not apply.

C. *The BOE's arguments for Younger abstention rest on an abrogated interpretation.*

The BOE's third argument for abstention relies on *Younger v. Harris*, 401 U.S. 37 (1971), where the Supreme Court held that "traditional equity concerns and principles of comity require federal courts to refrain from enjoining pending state criminal prosecutions." *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 351 (1989) ("NOPSI"). Later, the Supreme Court expanded the *Younger* doctrine to apply to "particular state civil proceedings that are akin to criminal prosecutions," and proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts," but no others. *Sprint*, 571 U.S. at 71. And in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, the Supreme Court added three factors to be considered under a *Younger* analysis:

> [First, whether there is] an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

457 U.S. 423 (1982).

The BOE, as well as the cases it cites, relies on these *Middlesex* factors to argue that *Younger* abstention should apply. [ECF No. 20, at *19]. But the Supreme Court recently admonished lower courts for applying the *Middlesex* factors outside the "three classes of exceptional cases for which *Younger* abstention is appropriate"—namely criminal prosecutions, "civil proceedings that are akin to criminal prosecutions," and proceedings that "implicate a State's

11

interest in enforcing the orders and judgments of its courts." *Sprint*, 571 U.S. at 71. "Circumstances fitting within the *Younger* doctrine … are 'exceptional;'" and should not be "[d]ivorced from their quasi-criminal context" lest they "extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." *Id.* at 72 & 81-82.[8]

Because this action does not arise in quasi-criminal context, the *Younger* doctrine simply does not apply.

## CONCLUSION

For these reasons, the Court should enter an Order denying the BOE's motion to dismiss and granting such other relief as the Court deems just and proper.

\* \* \*

**ROXUL USA, INC., d/b/a ROCKWOOL**

/s/ Joseph V. Schaeffer
James A. Walls (WV Bar # 5175)
Joseph V. Schaeffer (WV Bar # 12088)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
P.O. Box 615
Morgantown, WV 26507-0615
Ph. 304.291.7952
Fax 304.291.7979
jwalls@spilmanlaw.com
jschaeffer@spilmanlaw.com

James E. Simon (WV Bar # 13265)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Boulevard, East (25301)
P.O. Box 273
Charleston, WV 25321-0273

---

[8] Several of the cases the BOE cites in its discussion of *Younger* abstention likely would be decided differently after the Supreme Court's admonition in *Sprint*. With the possible exception of *Laurel Sand & Gravel, Inc.*, 519 F.3d 156 (4th Cir. 2008), none involved a criminal or quasi-criminal proceeding or a collateral attack on a state court order or judgment. *M&A Gabaee v. Cmty Redev. Agency of City of Los Angeles*, 419 F.3d 1036 (applying *Younger* in the case of parallel civil proceedings); *Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir. 1975) *Forest Hills Util. Co. v. City of Heath, Ohio*, 539 F.2d 592 (6th Cir. 1976) (same).

        Ph. 304.340.3400  
        Fax 304.340.3401  
        jsimon@spilmanlaw.com

        James C. Walls, III (WV Bar # 13277)  
        SPILMAN THOMAS & BATTLE, PLLC  
        301 Grant Street, Suite 3440  
        Pittsburgh, PA 15219  
        412.324.1118  
        412.325.3324 (facsimile)  
        jwalls3@spilmanlaw.com

11752412

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROXUL USA, INC.,**
a Delaware corporation,

      **Plaintiff,**

v.                                            Civil Action No. 3:19-CV-54
                                                      (Judge Groh)

**BOARD OF EDUCATION OF THE**
**COUNTY OF JEFFERSON,**
a West Virginia county board of education,

      **Defendant.**

## CERTIFICATE OF SERVICE

I, Joseph V. Schaeffer, hereby certify that on April 26, 2019, I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR ABSTAIN** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Anthony J. Majestro, Esq.
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P1200
Charleston, WV 25301
amajestro@powellmajestro.com
*Counsel for Board of Education of the County of Jefferson*

Courtney B. Harden, Esq.
BrigliaHundley, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
charden@brigliahundley.com
*Counsel for Board of Education of the County of Jefferson*

                                                    /s/ Joseph V. Schaeffer
                                                    Joseph V. Schaeffer (WVSB #: 12088)