IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROXUL USA, INC.,**

    **a Delaware corporation,**

**Plaintiff,**

v.          Civil Action No. 3:19-CV-54 (Judge Groh)

**BOARD OF EDUCATION OF
THE COUNTY OF JEFFERSON,**

    **a West Virginia county board of education,**

**Defendant.**

## MEMORANDUM IN OPPOSITION TO MOTON
## FOR TEMPORARY RESTRAINING ORDER
## OR PRELIMINARY INJUNCTION

### INTRODUCTION

Defendant, Board of Education of the County of Jefferson ("School Board"), files this response in opposition to the Motion for Temporary Restraining Order or Preliminary Injunction filed by Roxul USA. Inc. ("Roxul").

### VERIFIED STATEMENT OF FACTS

The School Board contests the facts in Roxul's Motion for Temporary Restraining Order or Preliminary Injunction. Roxul's facts are simply wrong, incomplete and misleading.

Over the past decade, Jefferson County has experienced a significant increase in both the number of students and the level of need of students served. The intensive needs of students requiring special education services increased. One consequence of this influx is the necessity to pay for highly specialized services and placements for children whose medical or behavioral needs are beyond the current staff's capacity. In addition, the School Board has seen a significant

increase in the number of children who are victims of either Neonatal Abstinence Syndrome (in utero exposure to opioids) or the victims of abuse and neglect from an addicted or incarcerated parent.

There are twenty-two Jefferson County special education students who must be educated outside of the State of West Virginia. The cost of sending these children out of West Virginia is more than $100,000 per child per year. These most challenged students spend between 3-4 hours per day on a bus. The location of the schools out of state means that children do not have access to any friends/neighbors/typically developing peers. Further, community-based instruction, a cornerstone component of special education, occurs in a geographically distant area where these students will never reside. The out of state schools are not subject to or governed by the Jefferson County Schools rules, regulations, and protocols reducing Jefferson County Schools efforts to provide a transparent and open educational system for parents and the community.

The School Board identified the need for a regional student support center many years ago with the ever-growing number of students who require, and are constitutionally entitled to, a thorough education. The intent behind a regional student support center is the flexibility to ensure education of all the Jefferson County students. Just one example of the flexibility and ingenuity of the School Board is the Virtual Education Program. There are over 900 students (10 % of the entire student population of Jefferson County) who are home schooled for any number of reasons. The School Board introduced a pilot program for middle school age children for Virtual School. It has been incredibly successful but requires space not currently available where those students to meet in non-traditional classrooms. Without facilities, those meeting places are in firehouses and libraries.

In addition, the School Board recognized a need to provide specific educational services for those children who have suffered severe trauma living in Jefferson County. The School Board instituted an elementary trauma informed care program entitled "The Owls' Nest" in 2018 to support these children. Due to the limited resources, only eight children can be in the program at one time. The School Board estimates that 12-15 children have been supported by the program but there are more who would qualify if there were more resources. The School Board meets these students' need through employment of clinical social workers, mental health therapists, licensed psychologists, school counselors, mentors and a host of other support mechanisms to assist these students in succeeding. However, these critical resources are limited. They are scattered across 17 schools. The School Board determined this situation is less productive and insufficient to meet the social – emotional needs of Jefferson County students.

In February 2019 the School Board began conversations with the Aurora School, the school to which the twenty-two special education children are being bussed. The Aurora School wants to expand to Jefferson County to provide special education services locally. The School Board obtained a commitment from Berkeley County to send some of its students to the new Regional Student Support Center ("RSSC").

That Berkeley County is participating in this planning process is significant. The West Virginia School Building Authority is the West Virginia Department of Education's organization responsible for allocating state funding to K-12 educational facilities around the state. There is an established rubric for prioritizing such funding as it cannot meet the identified need. One of the rubric criteria with the highest consideration is whether the program proposed is regional to support decreased costs for multiple West Virginia school systems. A regional center to provide special education and social emotional support

services has been discussed and reviewed by both the special education directors and superintendents of the eight school systems comprising Region 8.

All Region 8 school systems, including Berkeley, have asked about developing more cost effective joint regional service models for special education students provided feasible transportation times can be addressed. Berkeley has the largest special education population in the Eastern Panhandle and all of Region 8.

To be geographically convenient to Berkeley County and several of the Jefferson County schools, the optimal location of the RSSC is the Roxul Property, which is one-half of the subdivided Jefferson Orchard. It was the through the highly publicized debate over Roxul's intention to build a factory on the Roxul Property that the School Board learned of the property. The Roxul Property is within one mile of two elementary, 1 middle, and one high school. Further, the Roxul Property is in closest proximity to the school housing the Jefferson County Schools academic program for students with behavioral disabilities, who will benefit significantly from convenient access to new center's behavioral programs. And the Roxul Property is located off Route 9 for students who will be transported by special needs and out of area buses.

Despite the other half of subdivided Jefferson Orchards property being vacant land, the School Board could not consider that location. West Virginia code prohibits construction of a new school building near a factory. While "near" is not defined in the West Virginia Code, the World Health Organization ("WHO") publishes a set of standards which provide best practices and guidelines for school building construction. The WHO recommends that school buildings should not be built within 2 miles of a factory. The result of Roxul using its to build a factory is to eliminate a 12-mile radius of the most convenient land to build the regional support student center.

Simultaneously the School Board obtained confirmation of the Aurora School's intent to open a campus in Jefferson County, the School Board is preparing its Comprehensive Education Facilities Plan ("CEFP"). The CEFP is an enormous undertaking. So much so that a revised/updated CEFP is only required once a decade. All other years require only an "update" submission.

Preparing the CEFP is a normal and customary part of the School Board's business. The School Board determined in September of 2018 to prepare the CEFP earlier than its January 2020 due date as a mechanism to support its bond call in September 2019. The bond will fund the construction of all new educational facilities, including the RSSC and the repair of older educational facilities. The bond will also include the specifications for two other future school sites on two other parcels of land.

While searching for the land for the other two schools during the 2016-2017 time frame, the School Board identified properties also not "for sale" when the School Board acquired them similarly to the Roxul Property. Through the process of identifying and acquiring the other two parcels, the School Board knows of the acres necessary for three buildings (as they have been identified for the 155-acre parcel owned by the School Board). The School Board applied that knowledge to its identification of the Roxul property as a site for the RSSC.

The School Board's meetings about educational facilities and the CEFP began in November 2018 and are culminating in April meetings which took place on April 9, 11, 23, and 25. The School Board retained an expert consulting/architectural firm, OWPR to assist it with the CEFP process in January 2019. OWPR conducted a full facility review with structural engineers between January and March. That data was provided to nine committees composed of Jefferson County Schools staff and community members who study specific educational needs including

New Build and Social Emotional Support. OWPR and the nine committees presented the architects' structural findings and each committees' suggestions to the citizens of Jefferson County (in each of the four geographic areas of Jefferson County). The citizens provided input via paper forms. In addition, the School Board provided an electronic, online input program called "Thought Exchange" that promotes citizen input and ratings of the suggestions. The School Board received input from over 500 participants.

The timing of acquiring the Roxul Property is contemporaneous with the Board's inclusion of the RSSC in the CEFP and the School Board's plan to hold a special election to vote on an educational facilities bond. On April 8, 2019, the School Board voted that the Roxul property was necessary and convenient for the location of the RSSC.

On April 9, 2019, under W.Va. Code §§ 18-5-8, 54-2-1, the School Board notified Roxul by letter of the decision and offered to purchase the property for the market price of $1,362,900 ($7000/acre), a price consistent with recent sales. at p. 3-4. The recent sales range from a closing date of October 18, 2018 to March 22, 2019. The letter informed Roxul: "If you believe the Property a different value, please contact the undersigned to begin negotiations." *Id.*

Roxul's only response has acknowledged receipt from Michael Zarin on April 9, 2019. On April 12, 2019, Roxul initiated this proceeding. Doc. 1. Roxul served the Complaint on the School Board at 3:31 p.m. Doc. 18 at ¶ 53. That same afternoon, less than thirty minutes after Roxul served the Complaint, the School Board filed its Petition to Condemn Lands in the Circuit Court of Jefferson County ("State case") Doc. 18-4. When the Petition was filed, no proceedings had been held in this Court. Then on April 15, 2019, this Court set a hearing on Roxul's motion for preliminary injunctive relief. Doc. 5. On April 16, 2019, the Circuit Court of Jefferson County entered an order setting a hearing for June 3, 2019 on the School Board's Motion for

Immediate Entry. *See* Exhibit B (Motion for Immediate Entry); Exhibit C (Order Granting a Right of Entry Hearing). On April 22, 2019, Roxul filed its Amended Complaint.

At the June 3, 2019 hearing in the State case, the judge will determine whether or not the School Board's petition to acquire property by eminent domain is for a public purpose. Determining public purpose is a matter of law and not a matter of fact. If Judge Hammer determines the taking has been for a public purpose, the School Board obtains defeasible title to the Roxul Property. The School Board can pursue the inclusion of the RSSC requirements on the CEFP and on the September bond. If Judge Hammer determines the School Board is not taking the Roxul Property for a public purpose, the State case is over. This matter is within the purview of the state court.

The School Board will be irreparably harmed if this Court grants Roxul's request for a temporary restraining order or preliminary injunction. The School Board will miss the opportunity to include the facilities requirements on the September bond. It is imperative to get the public support for a special election and vote on an educational facilities construction bond right now. The political effort cannot be repeated twice. Essentially, this bond is a request for the citizens to submit to additional taxation and/or for the dedication of their tax money for school infrastructure. The School Board has determined this is an optimal time to call for a bond because a prior bond is expiring at. The School Board believes the general public is more likely to vote for a bond that will not change the amount of money they are paying rather than a bond that will increase the amount they are paying. Timing is crucial to include the RSSC facilities on this bond.

Further, the School Board will be irreparably harmed by Roxul's continued construction on the Roxul Property. The School Board will need to deconstruct the footers and some of the

underground piping that exists on the Roxul property when they gain access to the property on June 3, 2019. However, if Roxul is granted a preliminary injunction and may continue construction, the demolition costs to the School Board may increase exponentially.

The School Board will be irreparably harmed if it is prohibited from acquiring the Roxul Property. The School Board will be prohibited from building the RSSC within 12 miles of the plant eliminating the geographic advantage for regional involvement from other counties in the area.

Roxul's Amended Complaint is filled with allegations of the School Board's "bad-faith," which are entirely contradicted by the facts revealed in the preliminary expedited discovery. Mrs. Skinner, the President of the Board of Education and the Board's Rule 30(b)(6) witness, testified that "the Board does not have a position on Rockwool" or "Rockwool's proposed factory."

When Roxul came present to the School Board, a "beautiful, flat piece of property that was right across from onE of our schools" came to the Board's attention. In that same presentation, Roxul provided important and relevant information about the quality of the soils on the property. Roxul stated that only a small portion of the property had any contamination from pesticides or arsenic (common problems on land previously used as apple orchards.). Roxul documented to the School Board that the Roxul property had been remediated with minimal effort (only 3-5 truckloads of dirt had to be removed.) Roxul's presentation highlighted exactly how perfect the property was for the RSSC.

Roxul's 30(b)(6) witness was deposed on Friday, April 26, 2019. The School Board does not have a transcript of the deposition and will supplement this response with the deposition and/or cross-examination of Roxul's witnesses at the April 30, 2019 hearing.

# ARGUMENT

**I. Roxul is improperly seeking a preliminary injunction with respect to claims this Court lacks jurisdiction over and/or claims where the Court should abstain.**

"[P]reliminary relief may never be granted that addresses matters 'which in no circumstances can be dealt with in any final injunction that may be entered.'" *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003) (quoting *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 220 (1945)). In the School Board's Motion to Dismiss Docs. 19, 20, this Court should dismiss this case for lack of subject matter jurisdiction or abstain. When subject matter jurisdiction is absent, preliminary injunctive relief is unavailable. *Di Biase v. SPX Corp.*, 872 F.3d 224, 232 (4th Cir. 2017) ("We find, however, that this Court cannot, as the district court has done, assume subject matter jurisdiction merely to reach a less thorny issue. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States' and is inflexible and without exception." (citation and internal quotations omitted)).

**II. In seeking a preliminary injunction, Roxul faces a high burden it cannot meet.**

Roxul faces a high burden. In *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), the United States Supreme Court held that a plaintiff seeking a preliminary injunction "must establish" four requirements -- "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. The Court emphasized that "[a] preliminary injunction is an extraordinary remedy never awarded as of right," *id.* at 20, and that the extraordinary remedy involves "the exercise of a very far-reaching power that is only to be employed in the limited circumstances that demand it."

All four requirements must be satisfied. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *reversed on other grounds*, 559 U.S. 1089 (2010) (citing *Winter*). And, "a clear showing" of likelihood of success on the merits and irreparable harm is required besides satisfying the other factors before a preliminary injunction can be entered. *Id.* at 345. Even where a plaintiff has shown likelihood of success on the merits and irreparable harm, the balance of equities and the public interest factors can support denying a preliminary injunction. *Winter,* 555 U.S. at 23–24, 31 n. 5.

Finally, where "substantial issues of constitutional dimensions are before a court, those issues should be fully developed at trial in order to [e]nsure a proper and just resolution." *Capital Associated Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 298–99 (M.D.N.C. 2015) (quoting *Wetzel v. Edwards,* 635 F.2d 283, 291 (4th Cir.1980)). Indeed, "[o]n an application for preliminary injunction, the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact, and as a prerequisite to the issuance of an interlocutory injunction, there must be no disputed issues of fact." *Price v. City of Fayetteville,* No. 5:13–CV–150–FL, 2013 WL 1751391, at *4 (E.D.N.C. Apr. 23, 2013) (citation and internal quotations omitted).

### III. Roxul has failed to a make a clear showing of likelihood of success on the merits.

The Supreme Court has indicated that the court's weighing of the first factor, the applicant's likelihood of success on appeal, is likely to be the most important factor to be considered. *Moore v. Keller*, No. 5:11-HC-2148-F, 2012 WL 2458605, at *2 (E.D.N.C. June 27, 2012) (*Hilton v. Braunskill*, 481 U.S. 770 (1987)). As Roxul is unlikely to prevail on any of its claims, it is not entitled to injunctive relief.

### A. Roxul is unlikely to prevail on its federal constitutional claims.

*Substantive Due Process.* Roxul's first claim arising under the federal constitution is substantive due process. Doc. 16 at Count I. In the School Board's Motion to Dismiss, this claim is not ripe, Doc. 21 at p. 8, and this Court should abstain. *Id.* at 12. Roxul claims that the School Board's actions violated its rights to substantive due process because they were "arbitrary and capricious". Doc. 3 at 4. This claim fails.

To succeed on the substantive due process claim, Roxul "must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised." *Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir. 1999). Where, as here, government action "clearly and substantially advances a legitimate government interest and cannot be said to be irrational or arbitrary, certainly not in the sense of being without any conceivable public purpose," there is no substantive due process claim. *Madison v. Graham,* 126 F. Supp. 2d 1320, 1325–26 (D. Mont. 2001), *aff'd,* 316 F.3d 867 (9th Cir. 2002). Governmental acts that neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process rights only when it is shown that the action is not "rationally related to a legitimate governmental purpose." *Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997). Finally, state law violations cannot constitute due process violations. *Whittaker v. Cty. of Lawrence*, 674 F. Supp. 2d 668, 700–01 (W.D. Pa. 2009), *aff'd*, 437 F. App'x 105 (3d Cir. 2011) ("A bad-faith violation of state law remains only a violation of state law." (citation omitted)).

Here, the School Board has an undisputed public purpose for condemning Roxul's land – building school facilities to educate the County's most vulnerable students. It has valid reasons

for the selection of this site and the rejection of alternatives. Its decision is rationally related to this legitimate government purpose.

*Equal Protection.* Roxul's equal protection claim fails as a matter of law. As the Fourth Circuit has explained, the test is demanding when dealing with economic rights:

> [W]e will uphold the distinctions drawn by the County and Commission if they were rationally related to a legitimate state interest. Under this standard, a government entity need not actually articulate at any time the purpose or rationale supporting its classification, and it is not required to produce evidence showing the rationality of its classification. Choices like those challenged here are not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data. The zoning authorities' decision must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. The test is not a subjective one. The actual motivation for the local government's actions is irrelevant.

*Pulte Home Corp. v. Montgomery Cty.*, Maryland, 909 F.3d 685, 693 (4th Cir. 2018) (citations and internal quotations omitted). Roxul argues that it is being treated differently than other similarly situated businesses. Doc. 18 at ¶ 70. It identifies no such business. The School Board's rational basis for condemning Roxul's property is that it is a location that meets the needs for an important school project. Roxul's attempts at "courtroom fact-finding" fail as a matter of law.

*Fifth Amendment Takings.* Under the Fifth Amendment to the United States Constitution, "private property [shall not] be taken for public use, without just compensation." U.S. Const. am. V. Roxul relies on *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005) for the proposition that "[i]f a government taking is not for a public use or is so arbitrary or capricious to violate due process, "no amount of compensation can authorize such action." Doc. 18 at ¶ 79 (quoting *Lingle*). The claim also fails. The full quote from *Lingle* is:

> The Clause expressly requires compensation where government takes private property "*for public use.*" It does not bar government from interfering with property rights, but rather requires compensation "in the event of *otherwise proper interference* amounting to a taking." *First English Evangelical Lutheran*

12

> *Church,* 482 U.S., at 315, 107 S.Ct. 2378 (emphasis added). Conversely, if a government action is found to be impermissible—for instance because it fails to meet the "public use" requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action.

544 U.S. at 543. The case stands for the unremarkable proposition that takings must be for public purposes *and* not violate due process. Here there is no real question that the taking is for a public purpose. And the due process claim fails. Under the takings clause, Roxul is entitled to just compensation which it will receive. *Id.*

Roxul argues that the PILOT agreement constitutes evidence of bad-faith. Doc. 3 at p. 5. The agreement, which was signed before the School Board realized that it had an immediate need for the new facilities, is not in effect and does not go into effect unless numerous conditions are met. Doc. 1-1 at p. 9, Section 4.10. The agreement expressly provides for termination if it is in writing. *Id.* at p.8, Section 4.07. Nowhere in the agreement is a promise by the involved governments not to condemn the property. As evidence will show at the hearing, there are numerous other challenges to this project. Roxul can hardly say that completion is guaranteed.

Roxul also argues that the School Board's desire to construct the Regional Student Support Center is a pretext. The evidence would show otherwise. The School Board stands ready to pay Roxul over $1.3 million cash for the land. Its President testified under oath that the School Board is in the process of including the project in its CEFP and its upcoming bond issue. The other land Roxul identifies is already dedicated to other uses or too close to the Roxul facility for use as a school.

Roxul relies on two distinguishable state case. *Earth Mgmt., Inc. v. Heard Cty.*, 248 Ga. 442, 447, 283 S.E.2d 455, 460–61 (1981); *Borough of Essex Fells v. Kessler Inst. for Rehab.*, Inc., 289 N.J. Super. 329, 342–43, 673 A.2d 856, 863 (Law. Div. 1995). The courts found the

condemnation in "bad-faith" based on state common law limits on the power to condemn. A review of these decisions shows no attempt to tie these powers to the Fifth Amendment or even state constitutional provisions. The decisions cited in *Borough of Essex Fells, supra* at p. 338, likewise are based on state condemnation powers. Roxul has dismissed its state claims. Doc. 27. It's claim of bad-faith is simply not a constitutional claim rising to the level of violating the Fifth Amendment.

### IV. Roxul's attempt to show irreparable harm is exaggerated.

The School Board has today conducted discovery into Roxul's claims of irreparable harm. The deposition and documents, which are under seal, show that the $47 million figure Roxul argues in its motion is inflated and contains items which do not constitute irreparable loss. Similarly, the supposed need to meet customer demand is based on speculative assumptions.

Plaintiffs are also prejudiced by Roxul's refusal to provide anything more than a summary of the specific costs in discovery. Roxul agreed to produce documents and witnesses, but its lack of detail renders the School Board unable to verify these items.

### V. The balance of equities and the public interest favors the School Board.

The testimony establishes that the Roxul site is the only available, appropriate, and convenient for this important project. If a stay is granted, the School Board will be delayed for more than an entire school year to construct the RSSC. In addition, while the cost and the need to remove the facilities constructed Roxul continues to go full speed ahead in construction of additional facilities and infrastructure that will have to removed. Equity demands that that if an injunction is entered to preserve the status quo, Roxul should stop construction.

In the end the public interest is best served by denying the stay. Condemnation for important public uses is in the public interest. It is provided for in both the state and federal

constitutions. The public use here is to serve what is a fundamental right under our state constitution – education. And, finally, we should not lose sight of the fact that the public use is one that seeks to serve our most vulnerable children.

## CONCLUSION

Roxul has failed to meet its burden that the extraordinary remedy it seeks is appropriate or this case is one of the limited circumstances that demand employing this very far-reaching power. The motion should be denied.

                          **JEFFERSON COUNTY SCHOOLS BOARD OF EDUCATION**

                          **By Counsel**

                          s/ Anthony J. Majestro

Anthony J. Majestro (WVSB 5165)
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P1200
Charleston, WV 25301
Phone: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com

Courtney B. Harden (PHV 38038)
BrigliaHundley P.C.
1921 Gallows Road, Suite 750
Tysons Corner, VA 22182
Phone: 703-883-0880
Fax: 730-883-0899
charden@brigliahundley.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROXUL USA, INC.,

    a Delaware corporation,

Plaintiff,

v.                                            Civil Action No. 3:19-CV-54 (Judge Groh)

BOARD OF EDUCATION OF
THE COUNTY OF JEFFERSON,

    a West Virginia county board of education,

Defendant.

## VERIFICATION

I hereby swear and affirm under penalty of perjury that the information contained in the Memorandum in Opposition to Plaintiff's Temporary Restraining Order and/or Preliminary Injunction are true and correct to the best of my knowledge, information and belief.

_____
Kathryn Skinner

4.26.19
Date

My Commission Expires: 8/31/2022
My Commission No.: 7795175

_____ 4/26/19
Notary Public