IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROXUL USA, INC.,

    a Delaware corporation,

Plaintiff,

v.                                                       Civil Action No. 3:19-CV-54 (Judge Groh)

BOARD OF EDUCATION OF
THE COUNTY OF JEFFERSON,

    a West Virginia county board of education,

Defendant.

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISIDICTION OR ABSTAIN

### INTRODUCTION

Defendant, Board of Education of the County of Jefferson ("School Board") files this reply memorandum in support of its motion to dismiss the Complaint and Amended Complaint filed by Roxul USA. Inc. ("Roxul"), for lack of subject matter jurisdiction or abstain.[1]

### ARGUMENT

**I.    Roxul's attempted dismissal of its state law claims does not obviate their consideration for jurisdictional purposes.**

Roxul's original complaint contained five state law claims.  Doc. 1.  Its amended complaint added yet another.  Doc. 18.  Yet, days after amending to add its sixth state law claim,

---

[1] Factually, the School Board incorporates the facts set forth in its motion, Doc. 20, and the School Board's verified statement of facts in its response to the motion for preliminary injunction. Doc. 29. In addition, Roxul attempts to make much of the fact that the School Board's state complaint, Doc. 18-4, was filed less than thirty minutes after the School Board was served with the complaint in this case. Condemnation proceedings are filed in state court.  That the filings were the same day says more about Roxul's blatant attempt at forum shopping.  The idea that the detailed complaint was created and filed in less than thirty  minutes in response to Roxul's complaint is simply not credible.

Roxul filed it "Notice of Voluntarily Dismissal". Doc. 27 ("NOD"). In the NOD, purportedly based on Rule 41(a)(1)(A)(i), Roxul attempts to "voluntarily dismis[s], without prejudice, its claims arising under the law of the State of West Virginia." *Id.* Roxul now claims that the School Board's jurisdictional arguments based on state law are moot. Doc. 28 at p. 3. However, Roxul's procedural contortions are flawed, and more important, even if the state claims are dismissed here, Roxul's remaining claims are but "state law in federal law clothing." *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 721 (4th Cir. 1999).

Rule 41(a)(1)(A)(i)'s text is clear – the rule only permits the plaintiff "to dismissal *an action* without a court order. *Id.* (emphasis added). There is no authorization in Rule 41(a)(1)(A)(i) for a party to dismiss individual claims in a case; instead, partial dismissals require compliance with Rule 15(a). That Rule 41 applies only to a dismissal of the entire controversy is hornbook law. 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1479, Relationship Between Rule 15(a) and Other Federal Rules (3d ed. 2013) (citing cases). "[I]t has been held that when multiple claims are filed against a single defendant, Rule 41(a) is applicable only to the voluntary dismissal of all the claims in an action." 9 Charles Alan Wright et al., *Federal Practice and Procedure* § 2362, Voluntary Dismissal—In General (3d ed. 2013) (citing cases from district courts within the Fourth Circuit); *see also id.* ("A plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15."). Fourth Circuit precedent confirms this interpretation. *See Vernon Carlton Sales, Inc. v. SSMC, Inc.*, 53 F.3d 330, at 2 n.2 (4th Cir. 1995) (per curium) (table) (noting "Rule 41 "speaks in terms of dismissal of 'an action' (as opposed to a claim, cause of action, or single defendant" and calling the dismissal of a plaintiff's "only remaining cause of action pursuant to Rule 41(a)(2)" a "procedural error"); *Miller v. Terramite Corp.*, 114 Fed.Appx. 536, 540 (4th Cir.

2004) ("Because Rule 41 (a) (2) provides for the dismissal of 'actions' rather than claims, it can be argued that Rule 15 is technically the proper vehicle to accomplish a partial dismissal of a single claim."); *Skinner v. First Am. Bank of Va.*, 64 F.3d 659, at *2 (4th Cir. 1995) (per curium) (table) ("Because Rule 41 provides for the dismissal of *actions,* rather than *claims*, Rule 15 is technically the proper vehicle to accomplish a partial dismissal.").

While Roxul is likely to request that this Court cure its procedural error by deeming the NOD a request for an amendment under Rule 15(a), it would be inappropriate to do so here. First, while Rule 15(a)(1) ordinarily allows "a party [to] amend its pleading once as a matter of course," Roxul used its mulligan already, ironically to add a sixth state claim. Doc. 18. Roxul's request would be governed by Rule 15(a)(2) which applies "[i]n all other cases," and permits amendment "only with the opposing party's written consent or the court's leave." Roxul has met neither requirement.

Rule 15(a)(2) states that the "court should freely give leave when justice so requires." Leave freely given is not a blank check. Thus, a court may deny leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.,* 576 F.3d 172, 193 (4th Cir. 2009) (citing *Laber v. Harvey,* 438 F.3d 404 (4th Cir.2006). Whether an amendment is prejudicial is at the sound discretion of the district court and depends often upon the amendment's nature and timing. *Id.*

Here, Roxul's motivation is to avoid the dismissal based on ripeness or abstention. Amendments made to avoid an adverse ruling on a motion are disfavored. *See Capitol Radiology v. Sandy Spring Bank*, No. CIV.A. DKC 09-1262, 2010 WL 610785, at *2–3 (D. Md. Feb. 17, 2010), *aff'd*, 439 F. App'x 222 (4th Cir. 2011). Likewise, a plaintiff acts "in bad faith or

with an improper motive" when it seeks to amend its claims to obtain a favorable ruling on a jurisdictional question. *Evans v. Groom*, No. 7:17-CV-4-BO, 2017 WL 2779645, at *2 (E.D.N.C. June 26, 2017). The Court should presume from the request for dismissal without prejudice that that Roxul intends to prosecute these state claims in state court if it fails here which will give it a second bite at the apple. Its attempt to pocket these claims for now should be rejected because it is made in bad faith and would prejudice the School Board by requiring it to submit to delays and successive litigation.

      **II.**      **Even if its State Claims are dismissed, Roxul's claims are not ripe.**

Roxul acknowledges, as it must, the ripeness requirements set forth by the United States Supreme Court in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 (1985). Its attempts to excuse its noncompliance, however, fail.[2]

First, Roxul argues that *Williamson*'s finality requirement is met by the School Board's decision to seek condemnation of the property. However, in this case that decision is far from final. Unless Roxul will stipulate that it is waiving its state law challenges, the School Board has several hurdles based on Roxul's challenges – including the validity of the School Board's decision, preemption, estoppel, and common law and constitutional challenges based on supposed bad faith and arbitrary action. *See, e.g. Doc.* 18 at Counts IV, VI, VII, VIII, & IX. Even if these claims are dismissed here, they remain issues for the state court.

Unlike, the cases relied on by Roxul, the School Board's decision is not self-executing. Roxul is still in possession of the property and will be unless or until the court in the state action overrules Roxul's challenges to the petition – including the state law challenges raised in its

---

[2] Notably, Roxul doesn't contest the general *Williamson* requirements or fact that they apply to all of its constitutional claims. *See* Doc. 20, pp. 10-11.

4

amended complaint.  *See* W.Va. Code § 54-2-14a.  Thus, while a judicial challenge to a final zoning regulation is "remedial," here, the School Board's petition standing alone "does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision," *Williamson*, 473 U.S. at 194, because the School Board has to prevail in Court before it may deny Roxul its property.  W.Va. Code § 54-2-14a.

Similarly, in *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 513 (2d Cir. 2014), the Court emphasized that its decision was based on the "physical occupation theory of takings liability." *Id.* (citation and internal quotation omitted); *see also id.* ("Where there has been a physical invasion, the taking occurs at once, and nothing the city can do or say after that point will change that fact." (citation and internal quotation omitted).  Unlike the case here, Verizon was expressly permitted to erect and install its equipment under state law with no further approval by a court or administrative body.  *Id.* at 510 (citing N.Y. Transp. Corp. Law § 27).

Here the physical taking of the property has yet to occur and depends on a (presumably) challenged judicial proceeding.  Under these circumstances the judicial proceeding is part of the process that leads to the taking rather than a remedial challenge to it.  *See Palazzolo v. Rhode Island,* 533 U.S. 606, 607 (2001) (a takings claim only "once it becomes clear that the permissible uses of the property are known to a reasonable degree of certainty"); *Arnett v. Myers,* 281 F.3d 552, 563 (6th Cir.2002) (finding final decision requirement satisfied because decision maker "arrived at a definitive position inflicting an actual, concrete injury when its agents removed and destroyed" plaintiff's alleged property).  When the taking is not self-executing, courts find ripeness after judicial proceedings have concluded.  *Pascoag Reservoir & Dam, LLC v. Rhode Island,* 217 F. Supp. 2d 206, 215–16 (D.R.I. 2002) ("The first prong of the

Williamson ripeness test is satisfied. The Rhode Island Supreme Court issued a final decision regarding the property right."), *aff'd*, 337 F.3d 87 (1st Cir. 2003).

Second, Roxul incorrectly claims it is excused from seeking adequate compensation because "no amount of compensation can authorize a taking marked by arbitrariness, capriciousness, or bad faith." Doc. 28 at p.6. As the quote clarifies, this is an argument directed *at the authority to condemn*. If the taking is not authorized, adequate compensation is irrelevant. However, *Williamson* teaches that, when the taking is authorized (part one of the *Williamson* test), there is no violation unless just compensation is denied. 473 U.S. at 195. That Roxul is denying entitlement to the taking weakens the case for ripeness rather than excuses the requirement of seeking compensation.

Roxul claims that the $1.3629 million offer is inadequate. Doc. 28 at p. 6-7. That is precisely why the second *Williamson* requirement exists so the entitlement to compensation can be determined when, as here, there are procedures to do so. Absent being refused just compensation, there is simply no constitutional violation.

Finally, *Roxul,* cites *Hunt v. Ziegler*, 86 N.W.2d 345, 347 (Mich. 1957), which based upon Michigan state law, approved an injunction against a state condemnation proceeding. *Hunt,* which predates *Williamson* by almost three decades, says nothing about whether as a matter of federal constitutional law an eminent domain claim is ripe before attempting to seek just compensation. If state law bars this taking or leads to constitutionally inadequate compensation, that is decision that must be made in state court before the federal constitutional claims are ripe.

### III. Abstention is appropriate under *Pullman*.

Roxul argues that abstention is not appropriate under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (19__) and its progeny because the state law claims for estoppel, preemption, state equal protection, and Open Meetings Act violations, etc. have allegedly been voluntarily dismissed. Doc. 28 at pp. 10-11. Roxul's dismissal has not been accomplished, and Roxul's attempt to have its cake and eat it too by seeking dismissal without prejudice does not make these issues go away. Roxul does not even bother to contest that there are many unsettled questions raised by those arguments should Roxul raise them in state court. Doc. 20 at pp. 16-18.

Roxul also claims that West Virginia condemnation law is clear. Doc. 28 at p. 10. Roxul's argument starts with the following quotation: "In a condemnation proceeding, the property may lawfully be taken if the applicant's expressed use of the property is, in fact, a public one, and the condemnation is not impelled by bad faith or arbitrary and capricious motives." Syl. Pt. 1, *Gomez v. Kanawha Cty. Comm'n*, 237 W. Va. 451, 787 S.E.2d 904 (2016). This of course, is apart from the other state law claims Roxul attempts to dismiss.

The "bad faith or arbitrary and capricious motives" exception is noted in the case law. *See id.* at 460, n. 25, 787 S.E.2d at 913, n.24 (citing cases). However, neither *Gomez* nor the cases cited in the footnote involved a condemnation alleged to have been arbitrary or in bad faith, and Roxul has failed to point to any West Virginia decision explaining what this exception to the broad common law condemnation power means.

In *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30 (1959), the Supreme Court explained the dilemma faced by a federal judge with an uninterpreted standard:

> A Louisiana statute apparently seems to grant such a power. But that statute has never been interpreted, *in respect to a situation like that before the judge, by the*

7

> *Louisiana courts* and it would not be the first time that the authoritative tribunal has found in a statute less than meets the outsider's eye. Informed local courts may find meaning not discernible to the outsider. The consequence of allowing this to come to pass would be that this case would be the only case in which the Louisiana statute is construed as we would construe it, whereas the rights of all other litigants would be thereafter governed by a decision of the Supreme Court of Louisiana quite different from ours.

Under these circumstances the Supreme Court found abstention appropriate. But recognize:

> The special nature of eminent domain justifies a district judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively—the courts of the State under whose statute eminent domain is sought to be exercised—rather than himself make a dubious and tentative forecast.

*Id.* at 29. The same is true here. Abstention is appropriate.

### IV. Abstention is appropriate under *Younger.*

Abstention is also appropriate under *Younger v. Harris*, 401 U.S. 37 (1971). Roxul argues that the Supreme Court has limited *Younger* to criminal prosecutions, "civil proceedings that are akin to criminal prosecutions," and proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." Doc. 28 at 11-12 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 71 (2013)).

This case fits within the third category from *Sprint,* proceedings that implicate a State's interest in enforcing the orders and judgments of its courts. In West Virginia, the judicial proceedings are an integral part of process: "While it is ordinarily within the discretion of the agency exercising the power of eminent domain to determine the quantity of land necessary for a public use, what is such public use as will justify the exercise of the power in the particular case is usually a judicial question depending upon the facts." *State v. Horner*, 121 W. Va. 75, 1

S.E.2d 486, 488–89 (1939). Indeed, the judicial process is so integral that it is provided in the West Virginia Constitution. W.Va. Const., art. III, sec. 9. Post-*Sprint,* there does not appear to be any decisions applying this exception in the context of eminent domain proceedings. However, Courts have found that another category of proceedings – domestic law – fall within the third category. *Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, No. 4:16 CV 144, 2017 WL 76898, at *3 (E.D. Mo. Jan. 9, 2017) ("[I]t appears that this state order [dividing marital property], as a domestic relations decree, is of a kind uniquely in furtherance of the state courts' ability to perform their judicial functions.") (internal quotation marks omitted); *Charnock v. Virginia*, No. 2:16cv493, 2017 WL 5574987, at *3 (E.D. Va. Jan. 5, 2017) (finding that, when motions remained pending in state divorce proceedings, federal claims "challeng[ing] various rulings and decisions made in" the state divorce proceedings fall within third *Sprint* category) (internal quotation marks omitted); *Key v. Lilley*, No. 2:16cv130, 2016 WL 8292132, at *3 (E.D. Va. June 29, 2016) (applying Younger abstention to federal action alleging constitutional violations arising from state divorce proceedings when those proceedings were still ongoing); *Cole v. Montgomery*, No. 4:14-cv-4462, 2015 WL 2341721, at *7 (D.S.C. May 12, 2015) (applying Younger abstention to property claims brought in federal court against ex-husband when the same property was the subject of ongoing state divorce proceedings). Eminent domain proceedings, like domestic proceedings, are of a kind which uniquely further the state courts' ability to perform their judicial functions, especially in this case where the proceedings are provided for in the state constitution.

      This Court should abstain under *Younger*

9

**JEFFERSON COUNTY SCHOOLS
BOARD OF EDUCATION**

**By Counsel**

s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P1200
Charleston, WV 25301
Phone: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com


Courtney B. Harden (PHV 38038)
BrigliaHundley P.C.
1921 Gallows Road, Suite 750
Tysons Corner, VA 22182
Phone: 703-883-0880
Fax: 730-883-0899
charden@brigliahundley.com