# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**ROXUL USA, INC.,**
**a Delaware corporation,**
**d/b/a, "ROCKWOOL,"**

      Plaintiff,

v.                                     **CIVIL ACTION NO.: 3:19-CV-54**
                                             **(GROH)**

**BOARD OF EDUCATION**
**OF THE COUNTY OF JEFFERSON,**
**a West Virginia county board of education,**

      Defendant.

## MEMORANDUM OPINION AND ORDER OF HEARING
## DENYING THE DEFENDANT'S MOTION TO DISMISS OR ABSTAIN

On April 30, 2019, the parties in the above-styled civil action appeared before the Court for a hearing on the Defendant's Motion to Dismiss for Lack of Jurisdiction or Abstain. ECF No. 19. James A. Walls, Joseph V. Schaeffer and James C. Walls, III, appeared on behalf of the Plaintiff, Roxul USA, Inc. ("Rockwool"). Anthony J. Majestro and Courtney B. Harden appeared on behalf of the Defendant, Board of Education of the County of Jefferson ("BOE"). After reviewing the parties' briefs, considering oral argument, and carefully analyzing the controlling law, the Court **DENIED** the motion to dismiss for the reasons provided herein.

## I. Background

This civil action arises from the BOE's threatened condemnation of Rockwool's 194-acre real property located in Ranson, West Virginia. The background of that dispute is as follows.

Rockwool is "the world's leading manufacturer of environmentally-friendly stone wool insulation." ECF No. 18 at 1. In late 2016, Rockwool began considering fifty sites as locations for its new manufacturing facility in the United States. Id. Rockwool was recruited to Ranson, West Virginia by a "wide array of state and local officials." Id. In connection with those recruiting efforts, local officials, including the BOE, offered Rockwool tax incentives if it agreed to build its new facility in Ranson, West Virginia. Id. Rockwool accepted that offer, and in October 2017, Rockwool entered into a Payment in Lieu of Taxes Agreement ("PILOT") with the BOE and others. See ECF No. 18-1.

In November 2017, Rockwool began site preparation and construction on its new facility. ECF No. 18 at 2. To date, Rockwool has spent more than $49 million on permitting, constructing and extending utilities to its new facility. Id.; see Peter Regenberg Hr'g Test. However, since beginning construction, Rockwool has faced significant public backlash, not present during the negotiation of the PILOT agreement, over health concerns related to the facility's potential emissions. For example, Jefferson County citizens have "implored the [BOE] to either oppose the building of Rockwool or to request additional information so that an informed decision could be made regarding student safety." ECF No. 34-3 at 4.

Despite having signed the PILOT agreement, demonstrating support for the Rockwool facility, the BOE now opposes the construction. Specifically, the BOE has publicly withdrawn its support for the Rockwool facility, demanded a "non-negotiable" independent human health risk assessment, requested a moratorium on construction, and threatened to terminate the PILOT. ECF No. 34-3, 34-4. Most recently, on April 9,

2

2019, the BOE informed Rockwool that it intended to buy or condemn Rockwool's land, identifying the need for a Regional Student Support Center ("Student Support Center").

Thereafter, on April 12, 2019, Rockwool filed the complaint in this action seeking to enjoin the BOE from condemning its land. ECF No. 1. Contemporaneously, Rockwool filed a motion for a temporary restraining order or preliminary injunction. ECF No. 2. The Court scheduled a hearing on Rockwool's motion for April 30, 2019. ECF No. 5. Prior to that hearing, the BOE filed a motion to dismiss or abstain. ECF No. 19. Therein, the BOE argues that the Court must dismiss Rockwool's claims for lack of jurisdiction, or in the alternative, the Court should abstain from hearing Rockwool's claims.[1]

Although the BOE did not request a hearing on its motion, in the interest of judicial economy and without any objection, the Court heard the motion to dismiss or abstain on April 30, 2019, prior to the hearing on the motion for a preliminary injunction. For the reasons provided herein, the Court denied the motion to dismiss or abstain.

## II. Ripeness

First, the BOE argued that Rockwool's claims must be dismissed because they are not ripe under Williamson.

### A. Applicable Law

In Williamson, the Supreme Court announced two requirements before a takings claim is ripe. Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). First, the Supreme Court held that a takings claim is not ripe until

---

[1] The BOE also argued that the Anti-Injunction Act prohibited Rockwool from proceeding on its state law claims. In response, Rockwool voluntarily dismissed its state law claims. ECF No. 27. Acknowledging that proper procedure would require Rockwool to amend its complaint, and finding that judicial economy warranted the amendment, the Court **GRANTED** Rockwool leave to amend its complaint. Therefore, Rockwool proceeds in this action on Counts I, III, and V of its first amended complaint—all of which allege federal constitutional claims. Because no state law claims remain, the BOE's motion to dismiss with respect to the Anti-Injunction Act was **DENIED AS MOOT**.

the government entity responsible for the taking has made a final decision regarding the property at issue. Id. at 186. This requirement is known as the "finality" requirement. Next, the Court held that a takings claim is not ripe if the property owner has not sought "compensation through the procedures the State has provided for doing so." Id. at 194. This is known as the "exhaustion" requirement. In a subsequent decision, the Supreme Court acknowledged that forcing a property owner to litigate its takings claims in state court "may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court." San Remo Hotel, L.P. v. City and Cty. of San Francisco, 545 U.S. 323, 342 (2005). Nevertheless, a takings claim that does not meet the ripeness requirements must be dismissed. Id.

### B. Findings of Fact and Conclusions of Law

Here, the Court found that the "finality" requirement set forth in Williamson was met because the government entity responsible for the taking—in this case, the BOE—made its final decision to move forward with the condemnation proceeding. In fact, the BOE instituted the condemnation proceeding in the Jefferson County Circuit Court just thirty minutes after Rockwool filed the complaint in this action. See ECF No. 19-2. Therefore, the Court found that the finality requirement had been met.

Next, the Court found that Rockwool was not obligated to meet the "exhaustion" requirement because Rockwool's claims are not "just compensation" claims under the Takings Clause, as those described in Williamson. Rather, Rockwool alleges that the BOE's taking is invalid under the Due Process Clause and Equal Protection Clause— therefore, no amount of compensation could justify the taking. Because Rockwool is not

4

seeking "just compensation," there are no state procedures that would adequately compensate Rockwool.

Fourth Circuit precedent supports this interpretation of Williamson. In a takings case that also asserted due process and equal protection violations, the Fourth Circuit held that "[s]tate remedies need not be exhausted in order to pursue a § 1983 action claiming a violation of [due process and equal protection]." Front Royal & Warren Cty. Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 283 n. 3 (4th Cir. 1988) (citing Patsy v. Board of Regents, 457 U.S. 496 (1982) (holding that exhaustion of state remedies is not a prerequisite to an action under § 1983)). Therefore, the Court found that Rockwool was not required to meet the second prong of Williamson.

**C. Conclusion**

Finding that Rockwool met the "finality" requirement and was not obligated to meet the "exhaustion" requirement, the Court held that Rockwool's claims were ripe for review. Accordingly, the Court **DENIED** the Motion to Dismiss. ECF No. 19.

### III. Abstention

Alternatively, the BOE argued that the Court should exercise its discretion and abstain from hearing Rockwool's claims. Specifically, the BOE argued that the Court should abstain under Pullman and Younger.

**A. Applicable Law**

As a general matter, "federal courts are obliged to decide cases within the scope of federal jurisdiction." Sprint Commc'n, Inc. v. Jacobs, 571 U.S. 69, 71 (2013). A federal court should not abstain "simply because a pending state-court proceeding involves the same subject matter." Id. However, federal courts may decline to exercise their

jurisdiction in "exceptional circumstances." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). Specifically, federal courts have the power to refrain from hearing: (1) cases that would interfere with pending state criminal proceedings or certain types of state civil proceedings; (2) cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law; (3) cases raising issues intimately involved with the states' sovereign prerogative; (4) cases whose resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes; and (5) cases which are duplicative of a pending state proceeding. Id. at 716-17.

With respect to Pullman abstention, the Fourth Circuit has held, "To apply the Pullman doctrine, at a minimum it must appear that there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is 'potentially dispositive.'" Educ. Servs., Inc. v. Md. State Bd. for Higher Educ., 710 F.2d 170, 174 (4th Cir. 1983). If, however, the state law questions are "not in issue," Pullman abstention is not appropriate. Id.

With respect to Younger abstention, federal courts should only abstain in "exceptional circumstances." Sprint, 571 U.S. at 78. Specifically, under Younger, federal courts should only abstain from "state criminal prosecutions," "civil enforcement proceedings" that are "akin to criminal prosecutions," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 73. The Supreme Court has cautioned that Younger abstention

6

should not be applied to <u>all</u> parallel state and federal proceedings, as abstention is "the exception, not the rule." <u>Id.</u> at 81-82 (internal citations omitted).

**B. Findings of Fact and Conclusions of Law**

In this case, the Court found abstention was not warranted under <u>Pullman</u> or <u>Younger</u>.

<u>Pullman</u> abstention is not applicable because, given Rockwool's dismissal of its state law claims, there are no state law questions in issue. Rockwool's remaining claims rest solely on federal constitutional law—specifically, the Fifth and Fourteenth Amendments of the United States Constitution. Because there are no issues of state law "presented for decision," <u>Pullman</u> abstention is not appropriate under the circumstances.

Next, the instant proceeding does not fall in one of the three "exceptional categories" to which <u>Younger</u> abstention applies. See <u>Sprint</u>, 571 U.S. at 79. First, this action is civil in nature. Accordingly, the Court is not interfering with a state criminal prosecution, and the first category of <u>Younger</u> abstention does not apply. Next, the instant proceeding is not a civil enforcement proceeding "akin to a criminal prosecution." <u>Id.</u> "Such enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." <u>Id.</u> (identifying examples, including (1) disciplinary actions against a lawyer, (2) actions to enforce civil rights, (3) abuse and neglect proceedings, (4) actions to enforce obscenity laws and (5) proceedings to recover welfare payments obtained by fraud) (citations omitted). Here, the BOE is not sanctioning Rockwool for some wrongful act. Finding that this case is not akin to a criminal prosecution, the Court found that the second category of <u>Younger</u> abstention does not apply. Finally, the Court found that the third category of <u>Younger</u>

abstention does not apply because this action does not "touch on a state court's ability to perform its judicial function." Id. (identifying examples, including a civil contempt order or requirement for posting bond) (citations omitted). Therefore, the Court found that Younger abstention is not appropriate in this case.

### C. Conclusion

Finding that Pullman and Younger abstention were not warranted under the facts and circumstances of this case, the Court declined to abstain from hearing Rockwool's claims. Accordingly, the Court **DENIED** the Motion to Abstain. ECF No. 19.

## IV. Conclusion

Finding that Rockwool's claims are ripe for review and that abstention is not warranted under the circumstances for the reasons provided herein, the Court **DENIED** the Defendant's Motion to Dismiss for Lack of Jurisdiction or Abstain. ECF No. 19.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** May 7, 2019

/s/ Gina M. Groh
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE